**STATE of Missouri, Respondent,**

v.

**Harry SCOTT, Appellant.**

**No. 70703.**

Supreme Court of Missouri,
En Banc.

Dec. 12, 1989.

Rehearing Denied Jan. 10, 1990.

Burton H. Shostak, Deborah J. Kerns, Clayton, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Chief Justice.

The defendant was charged with four and convicted of two counts of violating § 576.020, RSMo 1986, reading in pertinent part as follows:

1. A public servant commits the crime of acceding to corruption if he knowingly solicits, accepts or agrees to accept any benefit, direct or indirect, in return for:

\* \* \* \* \* \*

(2) His violation of a known legal duty as a public servant.

\* \* \* \* \* \*

Section 556.061(22), RSMo 1986, defines "public servant" as follows:

"**Public servant**" means any person employed in any way by a government of this state who is compensated by the government by reason of his employment. It includes, but is not limited to, legislators, jurors, members of the judiciary and law enforcement officers. It does not include witnesses;

Count I of the indictment, which is typical of all of the counts, reads as follows:

The Grand Jurors of the County of St. Louis, State of Missouri, charges that the defendant in violation of Section 576.020, RSMo. committed the Class D felony of acceding to corruption, punishable upon conviction under Section 558.001.1(4) and 560.011, RSMo. in that between May, 1986 and September, 1986 at 18199 Chesterfield Airport Road, in the County of St. Louis, State of Missouri, the defendant, being a St. Louis County Correctional Officer, knowingly accepted from Leslie Stephens, a benefit, namely sexual favors in return for his violation of his known legal duty as a corrections officer, namely, his duty to guard the prisoners instead of seeking sexual favors from a prisoner during working hours.

The defendant held the position of Correctional Officer I at the St. Louis County Adult Correctional Institution, known as "Gumbo." In the course of his duties he came in contact with female inmates housed in a special section of this facility.

Leslie Stephens was incarcerated at Gumbo awaiting trial on charges of for-

gery and conspiracy. On a day near the end of May, 1986 she was approached by the appellant while she was working in the jail laundry. He pulled her toward him, kissed her, and, when she pulled away, told her not to resist or he would have her "locked down," meaning placed in solitary confinement. On a later occasion the appellant pulled her into a shower stall, pushed her to the floor, and inserted his penis into her mouth. Still later during her incarceration he encountered her out of the sight of other guards and prisoners, put his hand down into her pants, and inserted his hand into her vagina.

In late November of 1986 the defendant met Victoria Waters, an inmate serving time for stealing offenses, at a barred gate. He asked her for a "head job," saying that he would take care of her when she got out of jail. She then performed an act of fellatio on him through the bars. She performed a similar act on him at his request in February of 1987, and then submitted to normal sexual intercourse. The acts involving Waters are the subject of Count III of the indictment.

The defendant presents numerous arguments challenging the conviction. After considering them, we affirm.

### I. *Unconstitutional Vagueness*

■ The defendant presents the argument, often made but seldom sustained, that the statute is unconstitutionally vague and indefinite on its face, and as applied. The brief is barren of close cases in support of these propositions. It is argued that the term "known legal duty" does not give sufficient guidance so that affected persons may know their rights and obligations.

The statute in question is derived from the Model Penal Code, and was adopted in Missouri in 1977.[1] It is designed to protect the public from public servants who use their official positions for personal ends.

The defendant's supervisors testified about his duties, which consisted of watching over the prisoners and escorting them to the various places within the institution where they were required to be. He did not carry arms. A person of ordinary intelligence who accepts employment as a custodial officer should know that he violates his duties when he seeks and obtains personal sexual gratification from the persons in his custody within the institution. This is all the more so when the acts involved are regarded as depraved or loathsome by many, and violate, or border on violation of, express statutory provisions.[2] It is common knowledge, furthermore, that guards have a special advantage over inmates in being able to cause them great annoyance and discomfort, so that their threats or promises may be specially effective.

The defendant argues that known legal duties are confined to duties imposed by statute, regulation, or, possibly, explicit job description. We see no reason for construing the statute so narrowly. The jury may consider the nature of the position and the written and oral instructions of supervisors. It may conclude that certain conduct is inconsistent with the very nature of the position, even though no job description or other direction explicitly prohibits it, and that the inconsistency should be obvious to the public employee.

The appellant points to statutes, past and present, which punished explicit acts of official corruption in particular situations. It is not inappropriate, however, to adopt a general statute designed to apply to all public servants. The legislature is not obliged to anticipate all possible situations in which public servants might try to use their official positions to secure private gratification and might well conclude that the public is best protected by a statute in general terms. The statute puts persons in the position of the defendant on notice that they face prosecution if they use their authority for personal ends.

1. Section 576.020, RSMo 1986; Model Penal Code § 240.1 (Rev. Ed.1980); 1977 Mo. Laws 662.

2. Section 566.010(2), RSMo 1986; § 566.060, RSMo 1986 (sodomy); § 566.100, RSMo 1986; § 566.120, RSMo 1986.

In our recent decision in *State v. Dale*, 775 S.W.2d 126 (Mo. banc 1989), we rejected a vagueness challenge to a statute which punishes those who "knowingly neglect" patients in nursing homes. We held there that even laypersons who operated nursing homes were obliged to inform themselves, from regulations, instructions of state supervisors, and medical direction, about what was required for the care of patients. The case is closer than any cited by the defendant, and furnishes strong support for the challenged statute.

## II. *"Known Legal Duty"*

■ We have already answered the defendant's plaint that the phrase "known legal duty" is so indefinite that it does not give adequate advice to persons in the position of the defendant about what is required of them. The defendant continues his attack on this phrase at several points.

The defendant's duties were adequately demonstrated by the testimony of his supervisors. He is a "public servant" under § 556.061(22). His position exists for the protection and custody of persons involuntarily committed by legal authority, and therefore his every duty is a legal duty. The jury could reasonably find that the challenged conduct was so gross that it was inconsistent with the duties of a custodial officer as shown in evidence.

■ Nor is it necessary to define "known legal duty" in the instructions. The words are words of common understanding which the jury may apply to the facts it finds.[3]

■ The defendant offered a definition of "known legal duty," as follows:

*Legal duty* means that which the law requires be done or forborne by a determinate person.

This definition is circular and not particularly informative. We do not believe that it would have aided the jury in its task. The court was under no obligation to give it.

## III. *"In Return For"*

■ There remains the issue initiated, but perhaps not fully probed, by the defendant's Point III, reading as follows:

The court erred in failing to direct a verdict in favor of defendant at the close of all the evidence because there was no evidence to show what defendant gave "in return for" the alleged benefit he purportedly received. An essential element of the charged crime.

The point as stated is not well taken. There is evidence that the defendant threatened Stephens with solitary confinement if she resisted him. The jury could have found a direct relationship between this threat and her three ensuing sexual involvements with the defendant. *Cf. State v. Brown*, 364 Mo. 759, 267 S.W.2d 682 (1954). Thus the jury could find that the sexual favors described in Count I were granted in return for the threats. It makes no difference that the defendant may not have had the authority to place the inmates in solitary confinement. A prisoner might well believe that guards had this authority, or could effectively recommend the threatened sanction.

There is evidence that the defendant told Victoria Waters that he would take care of her when she got out of jail if she would perform as he asked her. The jury could find that she complied with this request because of his promise. It is of no moment that the promise may have been vague and indefinite. The defendant demonstrated his venality, and she may have perceived a benefit or feared reprisal. The evidence supports the conviction under Count III.

■ The threat and the promise as just described were not explicitly charged in the indictment. We are responsible for determining the sufficiency of the indictment, even though it is not challenged, because a sufficient indictment or information is jurisdictional in a criminal case.[4] We con-

---

3. *State v. Rodgers*, 641 S.W.2d 83 (Mo. banc 1982); *State v. Siekermann*, 367 S.W.2d 643 (Mo.1963).

4. Mo. Const. art. I, § 17, § 545.010, RSMo 1986; *State v. Harrison*, 276 S.W.2d 222 (Mo.1955).

clude, however, that the indictment is sufficient to withstand a motion to dismiss, and that further details could have been obtained by applying for a bill of particulars as to the manner in which the defendant's legal duty is alleged to have been violated. The bill of particulars was sought only as to "the legal duty violated and its scope." For the reasons discussed in Part II the court was not obliged to grant this request, and no point on appeal was based on the denial.

One of the counts of the information in the recent case of *State v. Wahby*, 775 S.W.2d 147 (Mo. banc 1989), illustrates the purpose and application of § 576.020. The material facts of the comparable count are described in the opinion as follows:

> Wahby was a public servant in his capacity as marshal of the court of appeals. Contrary to his legal duty, he failed to take steps to effectuate or cause the arrest of Larry Sutton. While Larry Sutton was free, Wahby asked him to work in his gun shop without pay. Wahby instructed Sutton to do as he was told once Sutton became aware that his case file had been "buried" in the archive. Sutton understood he was returning a favor by working in the gun shop. On one occasion, Wahby used the threat of sending Sutton to jail to procure a sexual liaison with Sutton's girlfriend. Taken together, these facts and circumstances are consistent with Wahby's guilt on the charge of acceding to corruption, and inconsistent with any reasonable theory of his innocence.

*See also State v. Horne,* 778 S.W.2d 756 (Mo.App.1989).

■■■ The dissent reads the indictment and the governing statute too narrowly. The term "acceding" is definitional, and not an essential element of the offense. One may accurately be said to accept a favor, even after making the initial proposition, and even though the donor acts out of hope or fear. The statute strikes at the misuse of public employment. It is not necessary, to support a charge of accepting, to show that both the donor and the defendant were corrupt. Even though the prosecution might have phrased the indictment more artfully the defendant was adequately notified of the charges he was obliged to defend.

It makes no difference that the evidence might have supported different criminal charges which might have given rise to fewer legal questions. The charge to be filed is a matter for prosecutorial discretion.

The judgment is affirmed.

RENDLEN, HIGGINS and BILLINGS, JJ., concur.

ANTHONY P. NUGENT, Jr., Special Judge, dissents in separate opinion filed.

ROBERTSON and COVINGTON, JJ., dissent and concur in dissenting opinion of ANTHONY P. NUGENT, Jr., Special Judge.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

ANTHONY P. NUGENT, Jr., Special Judge, dissenting.

I respectfully dissent.

Defendant Harry Scott was charged with "acceding to corruption" in violation of § 576.020, in that he knowingly "accepted a benefit" in return for "violation of a known legal duty as a public servant." Mr. Scott took "sexual favors" from two women by threats and coercion. His victims did not offer him sexual favors as charged in the indictment and as contemplated by § 576.020.1(2).

The scheme of Chapter 576, entitled "Offenses Affecting Government," includes the prohibition of both bribery of a public servant and accepting bribes by a public servant. Section 576.010 forbids the offering of "any benefit" to a public servant "in return for" his violation of his legal duty. Its corollary, § 576.020, prohibits a public servant's "acceding to corruption" by accepting any benefit "in return for" a violation of his legal duty.

In this case, the indictment charged defendant Scott with "acceding to corruption ... in that ... [he] ... knowingly accepted ... a benefit ... in return for his violation of his known legal duty...." For our analytical purposes, the key words of the indictment are "acceding to" and "in return for."

The grand jury could have charged the defendant with "soliciting" a benefit in return for his violation of duty, and we would have had a different case. But the prosecutor apparently saw no distinction between the act of soliciting a bribe or offer and the act of accepting one. Nevertheless, a vital distinction exists in this case for the following reasons:

First, the words "acceding to" in the statute and the indictment have a specific meaning bearing directly on the nature of the crime charged and the proof needed to sustain a conviction. "Accede" is a synonym of "assent," but it has a more specific connotation. As *Webster's New Collegiate Dictionary* (G. & C. Merriam Co., Springfield, Mass., 1974) notes, the words have a shared common meaning element: to concur with what has been proposed. *The American Heritage Dictionary of the English Language* (Houghton Mifflin Co., Boston, 1980) somewhat more helpfully says of "assent" and "accede" that they mean "to go along with" another's proposals or actions. "Assent" implies saying, "Yes," in a formal, somewhat impersonal manner. "Accede" connotes assenting after discussion or persuasion and implies yielding one's assent to a proposal. *See also Webster's Dictionary of Synonyms* (G. & C. Merriam Co., Springfield, Mass., 1st ed. 1951).

Thus, one accedes to the proposal, suggestion, offer or persuasion of another, a decidedly different act and the obverse of soliciting (and thus inducing) conduct of another. That distinction lies at the core of this case. Here the grand jury charged defendant Scott with acceding to a bribe by accepting a benefit—sexual favors.

Second, at trial the evidence established that defendant Scott made victims of the women by extorting sexual favors from them by threats and promises. The women made no offers of any kind. They were coerced into submitting to his demands. The defendant did not simply accept something offered to him, as charged. He took what he had the power to take. In doing so, he violated § 570.030.1 in that he extorted sexual favors from the women. The prosecuting attorney filed the wrong charge.

Section 570.030 prohibits stealing. It provides in part as follows: "1. A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." Section 570.010 defines "coercion" as "threats," among other things, to commit any crime or to inflict physical injury on the threatened person or "[t]o take or withhold action as a public servant...." Thus, the defendant's coercive taking of sexual favors from the women prisoners, if proved, would support a verdict of stealing, a class C felony. § 570.030.3(2).

Of course, by his coercive actions, defendant Scott has violated several sections of Chapter 566, Sexual Offenses, very likely including § 566.030, which forbids forcible rape.

The principal opinion says that the jury could have found that Leslie Stephens granted the sexual favors described in Count I in return for the threats. But the indictment did not charge the defendant with extorting the favors by his threats. It accused him of acceding to corruption by accepting something offered to him, the sexual favors. The record contains no evidence of anything being offered to the defendant to induce him to violate his duty. Such an offer or proposal is an essential prerequisite to the act of acceding to corruption.

With respect to Count III pertaining to Victoria Waters, the principal opinion states that "[t]he jury could find that she complied with his request because of his promise ... and she may have perceived a benefit or feared reprisal." This, too, stands the indictment on its head because

the indictment does not charge the defendant with requesting anything; it charges that he acceded to her blandishments. Again, the evidence does not show that she made an offer or proposal that he could accede to as the statute and the indictment contemplate.

Defendant Scott, an aggressor and extorter, coerced the sexual "benefits" from the women. Nothing in the evidence suggests anything but that they bestowed their favors on defendant Scott because they were coerced. That evidence does not support a finding that the defendant violated his legal duty because of the blandishments, proposals, offers, or promises of the women. Quite the opposite. The evidence shows that the only corruption the defendant acceded to was the corruption of his own lust and depravity. Unfortunately, the prosecutor did not charge him with that, nor did he prove beyond a reasonable doubt that the defendant had acceded to the corruption of any person by accepting a benefit "in return for" his violation of his duty.

For the foregoing reasons, the judgment should be reversed.