**STATE of Missouri, Respondent,**

v.

**Damon CALDWELL, Appellant.**

No. 80007.

Supreme Court of Missouri,
En Banc.

Nov. 25, 1997.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponergro, Asst. Atty. Gen., Lisa A. Fischer, Asst. Atty. Gen., Jefferson City, for Respondent.

PER CURIAM. [1]

A jury found Damon Caldwell, age 17 at the time of the offense, guilty of all charges in a four count information. He was sentenced under Count I to life imprisonment without possibility of probation or parole for

---

1. The appeal in this case was originally decided by the Court of Appeals, Eastern District, in an opinion written by the Honorable Charles B. Blackmar. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of this Court.

murder in the first degree, section 565.020 [2]; to life imprisonment under Count II for armed criminal action relating to the murder, section 571.015; to thirty years under Count III for assault in the first degree, section 565.050; and to thirty years under Count IV for armed criminal action attending the assault charge. Affirmed.

The defendant does not challenge the sufficiency of the evidence to support the verdicts. The jury could have found that the defendant, together with Lonnie Lockhart and some companions, was affiliated with a youth street gang known as the "Evergreen Crips." The group, some of whom lived in the city of St. Louis, paid a visit to Kinloch on the evening of January 28, 1995. They were seen by Larry Cole and Levell Griffin, members of a rival street gang known as the "Bloods." Lockhart inquired as to whether any of the people in his party wanted to "get on" Griffin and Cole. These two ran when they saw Lockhart and his companions enter an automobile, but they began walking when they reached the corner of Lurch and Martin Luther King streets in Kinloch. They then saw Lockhart and a man later identified as the defendant on the front porch of a building. Lockhart approached them and fired at Cole from a distance of fifteen feet, striking him in the leg. Cole fell to the ground, and Lockhart fired more shots at him from close range, inflicting a fatal neck wound. The defendant then appeared from behind Lockhart, who was very large, and fired at Griffin, the bullet passing through his chest. Griffin recovered and later identified the defendant as his assailant. The defendant, when questioned by police, admitted to being present and firing one shot.

### A. Grounds Affecting All Charges

Griffin picked the defendant's picture from a display of six photographs shown to him by the police and identified him in court at the trial. Caldwell moved to suppress the identification, producing testimony that Griffin had identified a picture of another person, that Griffin was not wearing his glasses at the time he was shot, and that Griffin gave vague testimony as to the time and place of the photographic display. Whether these circumstances tainted Griffin's positive identification of Caldwell in court was initially a question for the trial judge, and there is no reason to disturb his resolution of this issue.

■ Caldwell also moved to suppress his confession. The officer who took the statement testified that he followed proper *Miranda* [3] procedures and did not use force or threats. The trial judge could credit this testimony and was not required to accept the defendant's claim that he was struck or beaten. The trial judge's findings are supported by the evidence, and there is no reason for not accepting them.

■ Caldwell complains that the trial court erred in allowing the prosecutor to introduce into evidence an edited version of the statement of Will Johnson, one of the defendant's companions on the Kinloch trip, to Detective Butch Albert. Defense counsel cross-examined Detective Albert in detail as to what Johnson had told him, seeking to establish that Detective Albert had coached Johnson about what to say. The prosecutor then sought to introduce the entire tape into evidence, and, when the defendant objected, the court provided an edited tape including only the matters as to which Detective Albert had been cross-examined. Neither side called Johnson as a witness. The court acted within its discretion in allowing the jury to hear a more accurate version of Johnson's statement after the defendant had opened the matter up by his inquiries. *See State v. Glessner, 918 S.W.2d 270, 281 (Mo.App.1996).* There is, furthermore, no demonstration of prejudice because the jury had already heard the essence of the taped statement. Inasmuch as the tape was simply a definitive version of what had already been given in response to defense counsel's questions, the claim of improper bolstering is not well taken.

For the reasons stated, no prejudicial error is found regarding the convictions on Counts III and IV.

---

2. All statutory references are to RSMo 1994.

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## B. The Murder Verdict Director

■ In addition to the points discussed, complaint is made of the verdict directing instruction for the charge of first degree murder. The first three paragraphs of this instruction charge that the essential elements of murder in the first degree were committed by Lonnie Lockhart. This is a type of accessory liability in which, under the evidence, "the conduct of the offense was committed entirely by" Lockhart. *See Notes on Use to MAI–CR 3d 304.04.* The fourth paragraph of the given instruction reads as follows:

Fourth, that with the purpose of promoting or furthering the death of Larry Cole, the defendant Damon Caldwell *acted together with,* aided or encouraged Lonnie Lockhart in causing the death of Larry Cole, and did so after deliberation, which means cool reflection on the matter for any length of time no matter how brief. (Emphasis supplied).

The Notes on Use for MAI–CR 3d 304.04 recognize that instructions on first degree murder present a special problem when accomplice liability is charged, because the jury must be clearly advised that the prosecution has the burden of establishing that the accused accessory acted after deliberation. The notes provide that the last paragraph of 304.04 should be modified to read as follows:

. . . that with the purpose of promoting or furthering the death of [name of victim], the defendant aided or encouraged [name(s) of other person(s) involved . . . ] in causing the death of [name of victim] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief.

Thus, the instruction as given does not follow the injunction of the Notes on Use. The defendant specifically objected to the form of submission both during the instruction conference and in his motion for new trial. The court overruled the objections, expressing the opinion that all three of the options posed by the basic instruction, "acted together with, aided or encouraged," were supported by the evidence. Whether the deviation from the Notes on Use for first degree murder submissions dictates reversal must be determined.

The question is not in any sense one of submissibility. From the evidence the jury could have found that the defendant knew that Lockhart had a weapon, that Lockhart suggested in the hearing of the defendant that he might "get on" members of the rival gang, that the armed defendant accompanied Lockhart to the location of the shooting, and that the defendant's presence, as support, bodyguard, or otherwise, contributed to the killing of Cole. From this scenario the jury could have found that he acted after deliberation.

Rule 28.02(c) states:

Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form.

Rule 28.02(f) states:

The giving or failure to give an instruction or verdict form in violation of this Rule 28.02 or any applicable Notes on Use shall constitute error, the error's prejudicial effect to be judicially determined, provided that objection has been duly made pursuant to Rule 28.03.

Here the deviation from the Notes on Use is patent, and objection was timely made. The difference between the instruction suggested in the Notes on Use and the instruction, however, is minimal. The given instruction is legally erroneous only for its lack of conformity to the Notes on Use. The instruction enabled the parties to argue the element of deliberation to the jury, thus serving one of the principal purposes of jury instructions. The jury also had a correct formulation of the concept of deliberation, quite apart from such arguments as counsel chose to make, and was informed as to the proper application of the law to the facts.

■ A defendant is prejudiced by an erroneous instruction when the jury may have been adversely influenced by it. *State v. Richardson,* 923 S.W.2d 301 (Mo. banc 1996).

In this case, we are unable to say that the deviation prejudiced the defendant.

The judgment is affirmed.

All concur.