**STATE of Missouri, Respondent,**

v.

**Gary CULBERTSON, Appellant.**

**No. WD 55790.**

Missouri Court of Appeals,
Western District.

Submitted Jan. 13, 1999.

Decided May 25, 1999.

1. Respondent's motion for damages for frivolous appeal is denied.

Irene Karns, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kristin M. Frazier, Asst. Atty. Gen., Jefferson City, for Respondent.

Before SMART, P.J.; HANNA and LAURA DENVIR STITH, JJ.

SMART, Presiding Judge.

Gary Culbertson was convicted, after a jury trial, of four counts of statutory sodomy, in the first degree, § 566.062, RSMo 1994.[1] He was sentenced as a prior offender to three terms of fifty years' imprisonment and one term of life imprison- ment, to run consecutively. Culbertson appeals his conviction of Count I, claiming that the trial court erred in denying his motions for acquittal because the State's evidence, without reference to his confes- sion, was insufficient to convince a rational trier of fact beyond a reasonable doubt that he had committed the offense of sod- omy on or about January 9, 1996, as the information alleged.

Culbertson also claims that the trial court erred by admitting evidence that he possessed pornographic videotapes and watched them with the victim. He claims that the admission of this evidence violated his rights to due process of law and a fair trial as guaranteed by the Sixth and Four- teenth Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution because this evidence was offered for the sole purpose of showing his bad character and propensi- ty for sodomizing the victim. Culbertson further claims that this evidence was not legally relevant, because its prejudicial im- pact on the jury far outweighed its proba- tive value.

**Factual Background**

The evidence is viewed in the light most favorable to the verdicts. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993). At the time of the incidents giving rise to Culbertson's convictions, then eight-year old Cathy[2] lived in Chula, Missouri with her family. Culbertson lived approximate- ly one block south of Cathy's house, with his wife and two sons. The Culbertson residence was a daily gathering place for the neighborhood children, including Ca- thy, because Culbertson would often allow the children to do things their parents otherwise would not have permitted. For instance, Culbertson allowed the children to play Nintendo and other video games, as well as ride three-wheeled recreational

---

1. All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

2. We have changed the name of the victim for the purposes of this opinion.

vehicles and a riding lawnmower. Culbertson also had a treehouse in his backyard and a playhouse in his garage for the children. Culbertson also was known to give the children money to buy whatever they wanted from the store.

Culbertson built the treehouse during the spring of 1995. Cathy testified that it was "kind of a special thing between them." The treehouse had a padlock on the outside door for which Cathy and Culbertson had the only keys. Also, the door could be locked from the inside by a "turn thing." Inside the treehouse was a table, chair, television and VCR. Cathy and Culbertson occasionally watched pornographic movies together in the treehouse.

One day, according to Cathy's testimony, as Cathy was sitting on Culbertson's lap watching a children's movie, Culbertson "placed his hand between [her] legs" and "felt around" on the outside of her sweatpants. Another time, in the treehouse, Culbertson took his pants down and placed Cathy's hand on his penis and "white stuff kind of came out." Yet another time, when Cathy was alone with Culbertson in the treehouse, he pulled down her pants and touched her genitals with his tongue. This same act occurred several other places including the playhouse in the garage and the area by the lagoon in Chula. Culbertson told Cathy not to tell anyone or he would kill her best friend and have her father put in jail.

In October 1996, as Cathy was walking home from school past Culbertson's house, Culbertson gave her a letter and told her, "Don't let your mom see it and rip it up after you read it." The letter read:

[Cathy], it's Friday morning, sitting here trying to figure out what I must do after yesterday. I now know it's over. I'm sorry about bugging you last night. It won't happen anymore. The person I care about the most doesn't love me and I know it, so why hold on. You have a right to go your own way. I know you're giving up a lot more than you're getting but you have that right, so I wish you good luck in whatever you do. I can't be just someone that gives you money and builds things for you. So all I know to do is go on my way, maybe find someone else to do things for. Don't be mad at me. I do love you a lot but love has to be loved back or it dies. I never asked anything of you. I always left it in your hands. Whatever we did was up to you. Maybe I should have and I would have found out how you really felt about me a long time ago. I will not make that mistake again. When I built that treehouse for you I built it out of love for you and I believe you loved me back but now I know it was not that way, so I must do what I must do. You're a special girl. You always live in my heart and I wish God would have give [sic] me someone that loved me back. Don't seem fair. I don't blame you. It's just that way. Life sucks sometimes. I must rebuild my ·life. Don't know where to start and I guess I have already when I let you go. You take care of yourself and do whatever makes you happy. Stand up for yourselves [sic]. You're one special girl. Don't ever forget that. Love, Gary.

Cathy's mother caught Cathy reading the letter, took it and read it herself. When he learned that Cathy's mother had the letter, Culbertson came to her house to ask for it back. Cathy's mother refused to return it to him. Cathy's parents decided not to take immediate legal action against Culbertson and instead, forbade Cathy to return to Culbertson's house. Despite the prohibition, Cathy returned to Culbertson's house. Her parents then turned Culbertson's letter over to the sheriff's department.

In the process of its investigation, the sheriff's department executed a search warrant for Culbertson's house on February 11, 1997. The warrant was executed by Deputy Linn Thieme, Deputy Kim Grothe and Sheriff Gary Calvert. Pursuant to the warrant, forty-eight videotapes were seized from Culbertson's house and

of the fifteen tapes that Deputy Thieme viewed, all were pornographic in nature. Officers also found a pair of little girl's underpants at the house.

Culbertson was at his house when the warrant was executed, and he was immediately placed under arrest. After receiving his *Miranda*[3] warnings, Culbertson told Deputy Thieme that he was very close to Cathy and that he "loved her." At first, Culbertson denied any sexual allegations regarding Cathy, however, he later confessed that Cathy had placed his hand on the outside of her pants. Further, although Culbertson initially denied allegations of oral sexual contact with Cathy, Deputy Thieme testified that Culbertson told him:

> One night several children was at his residence. He and the children were playing hide and seek in the dark. Him and [Cathy] were partners. He and [Cathy] hid in the bedroom and they was on the bed. He said [Cathy] asked him to lean over and when he did she grabbed his head and pulled it between her legs.

Culbertson told Deputy Thieme that he "kissed and licked [Cathy's] vagina." When asked whether Culbertson was able to remember when this incident took place, Deputy Thieme replied, "Yes, he definitely remembered the first incident which was the hide and seek incident. He said – he told me he had been scared ever since it happened because he knew it was wrong. He said it was January the 9th, 1996."

Culbertson confessed that the next two instances of sexual contact with Cathy occurred in his garage in late March or early April. He insisted that any sexual contact that had occurred between him and Cathy was at her instigation, and Cathy threatened to tell her mother what was going on between them if he did not comply. He further insisted that he had not had sexual contact with Cathy since giving her the letter. When Sheriff Calvert later joined Culbertson's interview, Culbertson told

him the same story he had told Deputy Thieme, except that Culbertson said that all of the sexual encounters with Cathy occurred either in the garage or the treehouse; he did not mention any occurring in the bedroom.

Cathy testified Culbertson sodomized her on several occasions. She did not specify that any occurred on or about January 9, 1996. She could not say, based on her memory, that any occurred during a winter month. She did not describe any incident as happening during a game of hide-and-seek, although she mentioned one occurring in Culbertson's house.

The jury convicted Culbertson of four counts of statutory sodomy. He was sentenced, as a prior offender, to three terms of fifty years' imprisonment on Counts I, II and III, and one term of life imprisonment on Count IV, to be served consecutively. Culbertson appeals.

## CORPUS DELICTI

In his first point on appeal, Culbertson claims that the trial court erred in denying his motion for acquittal on Count I at the close of the State's case and again at the close of all the evidence, and submitting Count I to the jury because doing so violated his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, § 10 of the Missouri Constitution. Culbertson claims that the State's evidence failed to establish the requisite *corpus delicti* of Count I (the allegation of statutory sodomy occurring on or about January 9, 1996) and was therefore insufficient to convince a rational trier of fact beyond a reasonable doubt that he committed statutory sodomy on or about January 9, 1996, as alleged in Count I.

■ Culbertson did not preserve his claim of insufficient *corpus delicti* in his motion for new trial. Culbertson tries to gain review of the claim of insufficient

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*corpus delicti* by presenting it as an issue of the sufficiency of the evidence. An issue as to the *corpus delicti* rule, however, is distinguishable from an issue as to the sufficiency of the evidence, although they may overlap.

 The *corpus delicti* rule deals specifically with whether the defendant's confession of guilt may be considered substantive evidence of guilt. *See State v. McQuinn,* 361 Mo. 631, 235 S.W.2d 396, 397 (1951). Generally, the State must prove the commission of a crime with evidence independent of a confession of the accused. *Opper v. United States,* 348 U.S. 84, 89, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *State v. Willoby,* 34 S.W.2d 7, 8 (Mo.1930). The *corpus delicti* of a crime is established by proving that the crime charged was committed by someone. *State v. Wood,* 596 S.W.2d 394, 401–02 (Mo. banc 1980). *Corpus delicti* may not be presumed, *State v. Summers,* 362 S.W.2d 537, 542 (Mo. 1962), and the burden of proving it is upon the State. *See, e.g., State v. Meidle,* 202 S.W.2d 79, 81 (Mo.1947). The State may prove the *corpus delicti* of a crime through direct or circumstantial evidence. *State v. Worley,* 375 S.W.2d 44, 46 (Mo.1964). The evidence corroborating a confession may be slight. *State v. McGuire,* 327 Mo. 1176, 39 S.W.2d 523, 525 (1931).

In Culbertson's motion for acquittal at the close of the evidence, the *corpus delicti* rule is mentioned summarily, without any explanation or analysis, in a "boiler plate" motion. However, one futilely searches the motion for new trial for any mention of the failure to prove the *corpus delicti.* In some cases, such as a case in which there is only one charge, it could be argued that an insufficiency argument incorporates a *corpus delicti* argument. However, here it cannot be said that the insufficiency argument necessarily would be understood to incorporate the *corpus delicti* argument. In this case, there were four counts of statutory sodomy, and substantial evidence, independent of defendant's confession, that sodomy in fact occurred four

times. The only count as to which defendant raises the *corpus delicti* issue is as to the count which alleges an act of statutory sodomy on or about January 9, 1996, which was the only date defendant, in his confession, said he specifically remembered. In such an instance, it cannot be said that a claim of insufficiency necessarily incorporates a claim of lack of *corpus delicti* and puts the trial court on notice that such claim is being preserved rather than waived. That the two contentions are not identical was noted in *State v. Duvall,* 787 S.W.2d 798, 800 (Mo.App.1990), where the appellant's "point relied on" raised an issue as to proof of *the corpus delicti,* and the argument portion of the brief contended that the evidence was insufficient to show that the defendant committed the offense. The court, remarking on the inconsistency, nevertheless elected to exercise its discretion to overlook the inconsistency and to address both issues. *Id.*

### Discretionary Review

 Culbertson does not expressly request plain error review. In any event, unless a claim of plain error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted, this court will decline to exercise its discretion to review for plain error under Rule 30.20. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). Here, we find no substantial ground to believe that manifest injustice or a miscarriage of justice has resulted.

Cathy testified that Culbertson sodomized her on several occasions, although Cathy could not recall any of these incidents happening in the winter. She said the first "bad thing" occurred in Culbertson's house. Then there were, apparently, five more incidents. She mentioned in the "treehouse," in the "playhouse" in the garage, one in an outhouse by the cemetery, and one by the lagoon. Her testimony is somewhat unclear as to the exact number of incidents. The State also presented evidence of Culbertson's confession. Dep-

uty Thieme testified that after initially denying any sexual contact with Cathy, Culbertson admitted the incidents of sodomy with Cathy. Culbertson admitted there were incidents of sodomy on January 9, 1996, and again in March or April, and again in the fall of 1996.

Culbertson told Sheriff Calvert that he had oral sex with Cathy four times—twice in the playhouse in the garage and twice in the treehouse. It is unclear whether the January 9, 1996, incident was included as one of the "four times." While it is true that there is no specific corroboration outside of Culbertson's confession that any illegal act occurred specifically on January 9, 1996, there is substantial evidence that there were four specific incidents of statutory sodomy. The fact that Cathy testified to incidents of statutory sodomy but could not confirm any time or on around January 9, 1996, does not in this case give rise to the concerns which would cause us to elect to exercise plain error review. Point I is denied.

### Evidence Of Pornographic Videotapes

In his second point on appeal, Culbertson claims that the trial court erred by admitting evidence that he possessed pornographic videotapes and watched them with the victim. Culbertson claims that the admission of this evidence violated his rights to due process of law and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution because this evidence was offered for the sole purpose of showing his bad character and propensity for sodomizing the victim. Culbertson further claims that this evidence was not legally relevant, because its prejudicial impact on the jury far outweighed its probative value.

### Discretionary Review

During the trial, Culbertson's objection to evidence of the videotapes was that the issue was improperly raised on cross-examination, not that such evidence was lacking in legal relevance or that it was being improperly used to establish his bad character or his propensity for sodomizing Cathy. Consequently, this point was not preserved for our review. *See State v. Pospeshil,* 674 S.W.2d 628, 632 (Mo.App. 1984) (an objection stating the grounds must be made at the time that the evidence is introduced and the same objection then carried forward on appeal in order to preserve it).

Plain error review is within our discretion, *State v. Brown,* 902 S.W.2d 278, 284, and should be used sparingly. *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995). As already noted, we will decline to review for plain error unless the claim for error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *Brown,* 902 S.W.2d at 284. "When guilt is established by overwhelming evidence no injustice or miscarriage of justice will result from [our] refusal to invoke [plain error review]." *State v. Jordan,* 627 S.W.2d 290, 293 (Mo. banc 1982) (quoting *State v. Bainter,* 608 S.W.2d 429, 431 (Mo. App.1980)).

In the present case, Culbertson's guilt was supported by the evidence discussed above. In light of the very strong evidence of his guilt, we decline plain error review of Culbertson's second point as well.

### Conclusion

Culbertson's conviction is affirmed.

HANNA and LAURA DENVIR STITH, JJ., concur.