**STATE of Missouri, Respondent,**

v.

**Michael D. KIDD, Appellant.**

**No. WD 58179.**

Missouri Court of Appeals,
Western District.

March 26, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Jeannie M. Willibey, Kansas City, MO, for appellant.

John M. Morris, III, Jefferson City, MO, for respondent.

Before LOWENSTEIN, P.J., ULRICH and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

The appellant, Michael D. Kidd, a police officer, was convicted after a jury trial in Platte County of acceding to corruption under § 576.020, RSMo, 2000.[1] He was sentenced to one year in the county jail and assessed a $100 fine. He argues that the trial court erred: 1) in submitting a jury instruction that did not define specifically the "known legal duty" that the appellant violated in return for sexual favors pursuant to MAI CR3d 330.12, and 2) in overruling his motion for judgment of acquittal because the evidence was insufficient to convict him beyond a reasonable doubt.

### Factual and Procedural History

Because the appellant challenges the sufficiency of the evidence, the facts are viewed in the light most favorable to the verdict, as set forth *infra*.

On July 3, 1998, Aaron Shineflew, Tina Hovick (who was Shineflew's girlfriend at

---

1. All further references are to RSMo 2000 unless indicated otherwise.

the time), and Hovick's friend, Brandie Ness, drove in Shineflew's vehicle from Iowa to North Kansas City for a rock concert. At the concert, the three smoked marijuana that had been given to them there. After the concert at around midnight, Shineflew took a marijuana cigarette with him, placed it in a cigarette pack in the driver's side door, and the three left for their hotel.

While Shineflew was driving to the hotel, they stopped at a gas station, which was closed. As they were leaving the gas station, Shineflew failed to stop at a stop sign, and Michael Kidd, a Ferrelview police officer, pulled them over. The appellant asked Shineflew whether he had any illegal drugs or alcohol. Shineflew responded that he had a joint and gave it to the appellant. The appellant handcuffed Shineflew, placed him in his patrol car, but did not tell him that he was under arrest or read him his *Miranda* rights.

The appellant then searched the car and made small talk primarily with Hovick about the son she had with Shineflew, as well as his own children. After searching the driver's side of the car, the appellant walked around to the passenger's side and asked Hovick to step out of the car. He touched her pockets to make sure there was nothing in them and had Hovick "snap" her bra. The appellant checked Hovick's identification and directed her to sit on a curb. The appellant then resumed searching the car and began talking to Ness. He asked her whether she had a boyfriend and told her she was "pretty." He then searched Ness by having Hovick "snap" Ness' bra to see whether there were drugs. The appellant next directed Ness to lift up her shirt and turn around so that he could look for weapons, saying that she "had big boobs" and "could hide things in there." The appellant asked Ness for identification, but she had left it

back at the hotel where she, Hovick and Shineflew were staying.

The appellant told the women that he did not know what to do because if he took Shineflew to jail, he would have to tow the car because neither of them could drive a stick shift. The appellant also said that "to do the right thing," he would have to take Shineflew to jail because Missouri had just passed a "no tolerance law." He also said he did not want to be a "jerk" and strand the women in Missouri and that he was getting off duty soon. The appellant asked, "what he was going to get out of it." Hovick said she would send him a Christmas card, and they laughed.

The appellant then told the three that he was not going to take Shineflew to jail if he could take Ness back to the Ferrelview police station and get a fingerprint identification from her. Hovick said the appellant would have to give them directions so that they could find their way back to the hotel from the police station, but the appellant said that they need not worry because he would bring Ness to the hotel himself. The appellant then told Shineflew that it was his "lucky day," removed the handcuffs and gave him back his marijuana. Shineflew and Hovick returned to their hotel.

Ness rode with the appellant to the station, believing that he had the right to make her go there and be fingerprinted. At the police station, she used the restroom. When she returned, the appellant asked, "Brandie, do you know what this is really about?" She replied, "Yeah, I'm getting a fingerprint ID." He responded, "No. This is about sex." Ness said that the appellant then threatened her, saying that if she did not have sex with him, she would go to jail, her friends would go to jail, and they would lose their child. Ness testified that she said over and over that she did not want to have sex with him, but

he kept threatening her. She testified that she was thinking she wanted to run, but did not know where to go because she was in an unfamiliar town. She did not scream because there was no one there to hear her.

At that point, the appellant started kissing Ness, and she again said "no." The appellant continued kissing her, removed her shorts and underwear, took his pants off and sat down on a couch. He pulled Ness on top of him and they had sexual intercourse. He then told her to "lay back" and they had sexual intercourse again. Ness testified that she thought about grabbing his gun, but she feared he would tell others that she was trying to hurt him and then she would be the one to be arrested. The appellant never took fingerprints, never called dispatch, and never used any other method of identifying her. On the way back to the hotel, the appellant asked her whether she knew anyone in law enforcement or had anything to do with the police and seemed worried that someone would hear what they were talking about through his radio.

When they returned to the hotel, the appellant walked Ness to her door, and, again, he did not ask for her identification. After appellant left Ness at the hotel, Ness told Hovick that the appellant had raped her. Ness directed both Hovick and Shineflew not to tell anyone and did not report the incident to the police because she did not know whether she could trust them and worried that the appellant would respond to the call. Ness did not want to go to a hospital and did not tell her family immediately because she was ashamed and embarrassed.

The appellant completed an activity log for his work on July 3 and 4, 1998. He indicated that he made a traffic stop at a stop sign and "warned and released" the driver. He did not check the box indicating that narcotics were involved, he did not record the names of Shineflew, Hovick or Ness, and he did not indicate that he transported a person to the station for identification, pursuant to department policy.

July 5, 1998, was the night after the three returned to Iowa. The appellant called Hovick's apartment and spoke with Shineflew. He asked for Ness' address and phone number, claiming that he needed more information from her. Shineflew gave out no information and the appellant continued to call Hovick's apartment, which scared her. Hovick and Ness reported the matter to their local police, who set up a "pretext" call between the appellant and Ness. Police recorded the appellant admitting to having had sex with Ness. Two weeks after the incident, the appellant told another Ferrelview officer that he had had sex at the police station. Specifically, the officer testified that appellant admitted:

> I pulled this vehicle over and, you know, I found some narcotics and I had this—this—female in the car, I couldn't ID her, so I took her back to the station. And then when I got back to the station, I propositioned her with—for sex. She took me up on it and we had sex.

After an investigation, the appellant was suspended and ultimately charged by indictment with one court of acceding to corruption.[2] He was sentenced by jury to

---

2. The indictment states in relevant part:
   The Grand Jurors of the County of Platte, State of Missouri, hereby charge that the defendant, MICHAEL DEWAYNE KIDD, in violation of Section 576.020, RSMo, committed

the Class D felony of acceding to corruption, punishable upon conviction under Sections 558.011.1(4) and 560.011 RSMo, in that on or about July 4, 1998, in the County of Platte, State of Missouri, the defendant, being a law

one year in the county jail and assessed a fine of $100. As a Class D felon, the appellant could have been sentenced to up to five years and assessed a fine of up to $5,000. §§ 558.011, 560.011. Further facts are set forth as necessary.

## Analysis

### I.

In his first point, the appellant argues that the trial court erred in submitting a jury instruction that did not define specifically the "known legal duty" that the appellant violated in return for sexual favors pursuant to MAI–CR3d 330.12, which is the corresponding jury instruction for acceding to corruption under § 576.020.[3] The instruction was submitted as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 3, 1998, in the County of Platte, State of Missouri, the defendant solicited from Brandie Ness sexual favors, and

Second, that the defendant was then a Ferrelview Police Officer, a public servant, and

Third, that as a Ferrelview Police Officer, the defendant had a *legal duty to enforce the law courteously and appropriately without fear or favor*, and

Fourth, that defendant solicited from Brandie Ness sexual favors in return for his violation of that legal duty, and

Fifth, that defendant acted knowingly with respect to the facts and conduct submitted in this instruction,

Then you will find the defendant guilty of acceding to corruption.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The emphasis added in paragraph third is the subject of the appellant's first point. The pattern MAI–CR3d 330.12 requires the instruction to include in paragraph third the "specific 'known legal duty' alleged to have been violated." There are no applicable Notes on Use. The appellant argues that the legal duty was stated in overly broad terms and therefore: A) allowed the jury a roving commission to find a "known legal duty" from the plethora of legal duties mentioned at trial, and B) permitted the jury to find the appellant guilty even if they found facts which did not constitute the commission of acceding to corruption. Though the appellant's first argument under this point was preserved for appellate review, the second argument was not preserved and therefore is subject to review for plain error, as set forth below.

### A.

■ Under Rule 28.02(c), the trial court must give the applicable MAI CR instruction where available to the exclusion of any other instruction or verdict form. This court will only reverse for an instructional error if there is both error in submitting the instruction and that the error prejudiced the defendant. Rule 28.02(f); *State*

enforcement officer, knowingly solicited from Brandie Mae Ness a benefit, namely, sexual favors, in return for his violation of his known legal duty as a Ferrelview Police Officer, namely, to enforce the laws of Missouri and to protect the public instead of requesting sexual favors from citizens he has detained in the line of duty.

**3.** The statute states in relevant part:

1. A public servant commits the crime of acceding to corruption if he knowingly solicits, accepts or agrees to accept any benefit, direct or indirect, in return for:

(2) His violation of a known legal duty as a public servant.

*v. Abdul–Khaliq,* 39 S.W.3d 880, 884 (Mo. App.2001). "A defendant is prejudiced by an erroneous instruction where the jury may have been adversely influenced by it." *State v. Caldwell,* 956 S.W.2d 265, 267 (Mo. banc 1997).

By way of background, the phrase "to enforce the law courteously and appropriately without fear or favor" was derived from the Ferrelview Police Officer Oath and the testimony of the Chief of Police. The State thus presented evidence that the appellant had a legal duty to enforce the laws courteously and appropriately without fear or favor. Accompanying that phrase in the Oath and in the testimony of the Chief of Police were other legal duties that the appellant failed to follow, such as failing to arrest Shineflew, returning marijuana to him, failing to follow the procedure for transporting a female passenger, etc. The appellant argues, without relevant citation of authority, that because the jury was presented with several of the appellant's legal duties, they were not required to resolve a factual issue and had a roving commission to find a known legal duty. In short, the appellant argues that the "known legal duty" was set forth in conclusory words.

■ Even though MAI–CR3d directs that paragraph third include the "specific 'known legal duty' alleged to have been violated," the Supreme Court of Missouri has held that it is not necessary to define "known legal duty" in the instructions for the crime of acceding to corruption. *State v. Scott,* 781 S.W.2d 64, 67 (Mo. banc 1989)(corrections officer's conviction affirmed for acceding to corruption by accepting/coercing sexual favors from inmates). "The words ['known legal duty'] are words of common understanding which the jury may apply to the facts it finds." *Id.* In 1989, the Supreme Court of Missouri held that it was unnecessary to re-

quire a prosecutor to state a specific known legal duty, and the drafters of the MAI have not abrogated that holding. Further, this court is bound by the constitution to follow the most recent case law from the Supreme Court of Missouri. *Anderson v. State,* 23 S.W.3d 672, 673 (Mo.App.2000)

In this case, instead of regurgitating the verdict director, the State replaced "known legal duty" with words of similar force that were drawn from its case. That the words are general and conclusory is not problematic under these circumstances and, given the holding in *Scott,* they are of a common understanding. That is sufficient for paragraph third of MAI–CR3d 330.12. *Scott,* 781 S.W.2d at 67.

Moreover, it is worth noting that neither at trial nor in his brief did the appellant offer alternative language for paragraph third. He complains nonetheless that the language in the instruction gives the jury a "roving commission" to determine which duty the appellant owed and how he breached it and that the jury did not have to find a single, specific act that was a breach of duty.

As in *Scott,* the appellant was a public official with a myriad of public duties. The Supreme Court's comments about the Scott's duties as a corrections officer are closely akin to the duties undertaken by the appellant police officer in the case at bar:

> The defendant's duties were adequately demonstrated by the testimony of his supervisors. He is a "public servant". .... His position exists for the protection and custody of persons involuntarily committed by legal authority, and therefore his every duty is a legal duty. The jury could reasonably find that the challenged conduct was so gross that it was inconsistent with

the duties of a custodial officer as shown in evidence. *Id.*

Again, it was unnecessary in *Scott* to define the legal duty in question; similarly, in this case, a more specific definition was unnecessary because the appellant's "every duty is a legal duty" and "the jury could reasonably find that the challenged conduct was so gross that it was inconsistent with the appellant's duties as shown in evidence." *Id.*

Similarly, a common-sense reading of the entire verdict-director indicates that paragraph third was appropriate as written. Specifically, the verdict director is replete with language requiring the jury to find that the appellant acceded to corruption by soliciting sexual favors from Brandie Ness. Had the legal duty been stated more specifically in paragraph third, the jury would have had to have found in paragraph four, hypothetically, that the appellant solicited from Brandie Ness sexual favors in return for his violation of his legal duty not to solicit sexual favors. Again, such specificity simply is not required. After reading the entire instruction, which is replete with reference to the appellant's solicitation of sexual favors, it is difficult to believe that the jury was misled or somehow felt the appellant had violated a duty such as failure to fill out adequate reports of the incident.

The language in the paragraph third of the submitted verdict director was not perfect, but the court declines to rule the instruction erroneous. Perhaps the State could have submitted a better instruction by omitting the words "courteously and appropriately" or simply by incorporating the language contained in the indictment,[4] such that paragraph third would have read "a legal duty to refrain from soliciting

sexual favors from witnesses or potential defendants."

Even if, however, the language of the submitted instruction was erroneous, this court would find no prejudice under Rule 28.02(f); for, as stated earlier, given the language of the entire instruction, the testimony of Ness, Shineflew, Hovick, the testimony of a fellow officer to whom the appellant admitted having sex with Ness, the tape recording of the appellant admitting he had sex with Ness, and the arguments of counsel, the jury was focused on the issue of whether the appellant led Ness to believe she and her friends were in trouble if she did not have sex with him. In short, there is absolutely no indication that the jury was adversely affected by the jury instruction, even if it could be declared erroneous.

**B.**

The second portion of the appellant's argument under point one is that the jury could have found the appellant guilty even if they found facts that did not constitute the commission of acceding to corruption. The argument centers around whether the State proved each and every element of § 576.020 given the allegedly deficient verdict directing instruction. Though the dissent relies on the reasoning premised herein, the argument was not preserved. Thus, under Rule 30.20, this court reviews for plain error only. Under Rule 30.20, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Review for plain error "is within our discretion ...., and should be used sparingly." *State v. Culbertson*, 999 S.W.2d 732, 737 (Mo.App. 1999). "When guilt is established by over-

---

4. See *supra* note 2.

whelming evidence no injustice or miscarriage of justice will result from [our] refusal to invoke [plain error review]." *Id.* "More than a mere showing of demonstrable prejudice is required as the basis for reversal under plain error." *State v. Mathews,* 33 S.W.3d 658, 662 (Mo.App. 2000). Because the substance of the appellant's argument here does not differ significantly from his first argument under his first point and because the appellant's guilt was established by overwhelming evidence, as set forth *infra,* this court declines to grant relief under plain error.

This point is denied.

## II.

In his second point, the appellant argues that the trial court erred in overruling his motions for judgment of acquittal, accepting the guilty verdict for acceding to corruption, and sentencing the appellant because the State did not prove his guilt beyond a reasonable doubt.

In reviewing a challenge to the sufficiency of the evidence, a court reviews the facts in the light most favorable to the verdict. *State v. Withrow,* 8 S.W.3d 75, 77 (Mo. banc 1999). The court accepts as true all the evidence favorable to the verdict, giving the State the benefit of all inferences therefrom and disregarding all evidence and inferences contrary to a finding of guilt. *State v. White,* 28 S.W.3d 391, 395 (Mo.App.2000). This court does not act as a juror in reviewing the sufficiency of evidence from a trial, but rather limits its determination to a search for substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *State v. Duffy,* 8 S.W.3d 197, 204 (Mo.App.1999).

Viewed in this light, the evidence adduced at trial and detailed *supra* is such that a reasonable jury could have found the appellant guilty beyond a reasonable doubt. In brief, the appellant was a public servant as an officer with the Ferrelview Police Department. Contrary to his duty, he solicited sexual favors from Brandie Ness instead of following the law. He admitted this in a taped conversation with Ness and to another police officer. Ness' testimony indicates that the appellant threatened her, saying among other things that he would have sex with her or arrest her and her friends. The jury could have found that the sexual favors described above were granted in return for the threats. *See Scott,* 781 S.W.2d at 67 *and State v. Wahby,* 775 S.W.2d 147, 154–55 (Mo. banc 1989).

The bulk of the appellant's argument under this point is that the evidence was not sufficient to establish beyond a reasonable doubt that he violated or promised to violate a known legal duty *in return for* sexual favors. This argument centers around the timing of the solicitation of sexual favors: the appellant argues that at the time he solicited sexual favors from Ness, he was under no legal duty or authority to arrest Ness, Shineflew or Hovick or take any other action. The appellant concedes that this question was disposed of unfavorably in *Scott.* 781 S.W.2d at 67. This court is bound by the constitution to follow the most recent case law from the Supreme Court of Missouri. *Anderson,* 23 S.W.3d at 673.

This point is denied.

The judgment is affirmed.

HARDWICK, J., concurs.

ULRICH, J., dissents in separate dissenting opinion.

ULRICH, Judge, dissenting.

I respectfully dissent from the majority's opinion affirming Mr. Kidd's conviction.

In his first point on appeal, Mr. Kidd claims that the trial court erred in submitting Instruction No. 6, the verdict director for acceding to corruption, because it did not specifically define the known legal duty that he allegedly violated in return for sexual favors from Ms. Ness. Instruction No. 6, which was patterned after MAI–CR3d 330.12, provided in pertinent part:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 3, 1998, in the County of Platte, State of Missouri, the defendant solicited from Brandie Ness sexual favors, and

Second, that the defendant was then a Ferrelview Police Officer, a public servant, and

Third, that as a Ferrelview Police Officer, the defendant had a legal duty *to enforce the law courteously and appropriately without fear or favor,* and

Fourth, that defendant solicited from Brandie Ness sexual favors in return for his violation of that legal duty, and Fifth, that defendant acted knowingly with respect to the facts and conduct submitted in this instruction,

Then you will find the defendant guilty of acceding to corruption.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

(emphasis added). Mr. Kidd contends that the known legal duty in paragraph third of the instruction was stated in overly broad terms and gave the jury a roving commission to determine what legal duty Mr. Kidd violated in return for sexual favors from Ms. Ness.

The trial court must give an applicable MAI–CR instruction where one is available to the exclusion of any other instruction. Rule 28.02(c); *State v. Richardson,* 951 S.W.2d 718, 721 (Mo.App. W.D.1997). The giving or failure to give an instruction in violation of Rule 28.02 or any applicable Notes on Use constitutes error, its prejudicial effect to be judicially determined. Rule 28.02(f); *Richardson,* 951 S.W.2d at 721. A conviction will be reversed for instructional error only if prejudice results to the defendant. *State v. Taylor,* 944 S.W.2d 925, 936 (Mo. banc 1997); *Richardson,* 951 S.W.2d at 721. "A defendant is prejudiced by an erroneous instruction when the jury may have been adversely influenced by it." *State v. Caldwell,* 956 S.W.2d 265, 267 (Mo. banc 1997). An erroneous jury instruction may be prejudicial to a defendant if it has the potential to confuse or mislead the jury. *State v. Green,* 812 S.W.2d 779, 787 (Mo.App. W.D. 1991).

"A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." *State v. Ward,* 745 S.W.2d 666, 670 (Mo. banc 1988); *State v. Riggs,* 2 S.W.3d 867, 873 (Mo.App. W.D.1999). Instructions should not be confusing, ambiguous, equivocal, and should not mislead jurors. *State v. Frankenberg,* 876 S.W.2d 286, 289 (Mo. App. S.D.1994).

MAI–CR3d 330.12, the applicable MAI–CR instruction in this case, does not require an instruction for acceding to corruption to define the phrase "known legal duty." *State v. Scott,* 781 S.W.2d 64, 67 (Mo. banc 1989). It does require, however, that the instruction "[s]tate the specific 'known legal duty' alleged to have been violated" in paragraph third. MAI–CR3d 330.12.

Mr. Kidd specifically argues that evidence of several legal duties was introduced at trial and that the instruction as submitted gave the jury a roving commission to determine which duty Mr. Kidd violated in return for sexual favors. I

agree. Instruction No. 6 stated that the known legal duty Mr. Kidd allegedly violated was a duty "to enforce the law courteously and appropriately without fear or favor." The statement is a part of the oath taken by law enforcement officers in Missouri and is intended to encompass both the duties and the spirit of fulfilling those duties impartially as provided by law. The clause, as a part of the oath of office, was not, however, constructed to articulate an element in a jury instruction. It may be a good oath, but it's deficient as a jury instruction. The oath and, thus, paragraph third, states Mr. Kidd's duty was "to enforce the law. . . ." The balance of the paragraph states how the law was to be enforced, "courteously and appropriately without fear or favor." While the oath, by design, expresses a comprehensive general duty of law enforcement officers to fairly enforce the law without soliciting favor, it necessarily includes many duties, both generally as an oath and as used in paragraph third in this case. Among the included duties were those about which the Police Chief of the Ferrelview Police Department testified, which were Mr. Kidd's duty to properly complete an activity log by stating the events that occurred while on patrol, his duty to follow proper procedure for transporting a female passenger, and his duty to contact the police chief for instructions if he encountered a person in possession of a controlled substance. The Chief of Police declared that Mr. Kidd had not properly performed any of these duties. This was the evidence regarding duties and their breach. Thus, as instructed, the jury had to have either (1) found that Mr. Kidd violated one of the duties stated by the Chief of Police in return for Brandie Ness's sexual favors, or (2) determined on its own that Mr. Kidd had a duty to not threaten to arrest a person unless she has sex with him and that he violated that duty. In either case, the jury had a roving commission to determine what legal duty Mr. Kidd violated in return for sexual favors from Ms. Ness. The statement in paragraph third of the known legal duty Mr. Kidd allegedly violated was, therefore, overly broad and vague.

The majority cites *State v. Scott*, 781 S.W.2d 64 (Mo. banc 1989), for the proposition that the trial court is not required to instruct the jury on what known legal duty a defendant has violated in return for receiving a benefit. *Scott* instructs that the phrase "known legal duty" within section 576.020 is not unconstitutionally vague and that defining the phrase "known legal duty" in the instructions is unnecessary. *Id.* at 66–67. *Scott* does not say, however, that paragraph third of the verdict director need not state the specific duty the State claims to have been breached. In *Scott*, the stated known legal duty in paragraph third of the verdict directing instruction, or its absence, was not contested by the defendant. Unlike Mr. Kidd in this case, Mr. Scott did not claim the verdict directing instruction was erroneous, and the issue was not before the Court in *Scott*. Contrary to the majority's position, MAI–3d 330.12 requires that the specific duty be stated in paragraph third.

In finding that paragraph third was not overly broad or prejudicial to Mr. Kidd, the majority also explains that when read with the entire verdict director, and paragraph fourth in particular, "the jury was focused on the issue of whether the appellant led Ms. Ness to believe she and her friends were in trouble if she did not have sex with him." The majority's position, by inference, asserts that paragraph fourth in particular, and the other paragraphs generally, define and sufficiently limit paragraph third. Thus, although paragraph third is universal, paragraph fourth sufficiently defines both the duty, required in paragraph third by MAI–CR3d 330.12, and the breach in return for a benefit, required in paragraph fourth. The effect of the

majority's position is that paragraph third, as stated in this case, is a permanent filler, usable whenever a law enforcement officer is charged with having violated section 576.020. The effect is contrary to the requirements of instruction MAI–CR3d 330.12 that a specific known legal duty be stated.

The majority acknowledges that the verdict finding instruction would have been "better" had it used the language of the indictment such that paragraph third would have read, "the legal duty to refrain from soliciting sexual favors from witnesses or potential defendants." I agree and had paragraph third used the language within the indictment that charged the duty violated, the jury could have determined whether Mr. Kidd breached the stated duty in return for a benefit as alleged in paragraph fourth. Had the indictment simply charged Mr. Kidd with violating "a legal duty to enforce the law courteously and appropriately without fear or favor," the defendant, at the very least, would have been entitled to a bill of particulars compelling the prosecutor to state what legal duty was violated in return for a benefit. Surely the jury, as the trier of fact, should have been informed of the legal duty violated. And surely the defendant is entitled to have the jury know what legal duty was violated.

Because Instruction No. 6 failed to comply with the requirements of MAI–CR3d 330.12 that a specific known legal duty be stated in paragraph third, its submission to the jury was error. Additionally, because the instruction necessarily confused or mislead the jury, its submission was prejudicial to Mr. Kidd.

The analysis does not end here, however, and another related issue exists that confronts the majority's opinion. Even if I accepted the majority's position that the jury was focused on a more specific duty to not abuse his authority as a law enforcement officer by threatening to arrest a person, or other persons, unless the person addressed engaged in sexual intercourse with him, no evidence was introduced that Mr. Kidd had such a duty. While it would seem common sense that a law enforcement officer has such a duty, to convict a defendant of a crime, the State is required, as a matter of due process, to prove beyond a reasonable doubt each and every element of the charged offense. *State v. Dudley*, 51 S.W.3d 44, 51 (Mo.App. W.D. 2001). A conviction of acceding to corruption requires proof that the defendant received a benefit in return for violation of a known legal duty as a public servant. § 576.020.1, RSMo 2000. Because no evidence was offered regarding the more specific known legal duty stated by the majority or set out in the indictment, the State failed to prove beyond a reasonable doubt an essential element of the crime of acceding to corruption. Due process of law requires, therefore, that the judgment of conviction be reversed, as unpalatable as that is.