**STATE of Missouri, Respondent,**

v.

**Doyle N. JOHNSON, Appellant.**

No. WD 53771.

Missouri Court of Appeals,
Western District.

Feb. 24, 1998.

David Simpson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., for respondent.

Before LOWENSTEIN, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Doyle Johnson appeals from his conviction of one count of unlawful use of a weapon, in violation of § 571.030.1(4), RSMo 1994,[1] and his sentence of eight years imprisonment as a prior and persistent offender. On appeal, Mr. Johnson contends that the trial court erred in denying his motion for judgment of acquittal at the close of the State's evidence because there was insufficient evidence to support his conviction. Mr. Johnson claims there was insufficient evidence to prove that he exhibited a weapon, as required by the statute. Mr. Johnson's claim is based on the fact that there was no evidence that any witness actually saw the weapon he allegedly used in the incident leading to his indictment.

The judgment of the trial court is affirmed.

### Factual and Procedural Background

The incident leading to the charge of unlawful use of a weapon occurred on February 16, 1996. Mr. Johnson was involved in a relationship with Tracie Porter, on and off for the last eight years. Mr. Johnson often stayed at Ms. Porter's apartment and kept the majority of his belongings there. Shortly before February 16, Ms. Porter attempted to end her relationship with Mr. Johnson. This resulted in an argument, after which Ms. Porter ordered Mr. Johnson to remove his belongings from her apartment and to stay away from her. After this confrontation, Ms. Porter went to stay at her mother's house

1. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise indicated.

where her mother lived with her stepfather, Clifford Gatson.

During the early morning hours of February 16, Mr. Johnson tried to contact Ms. Porter on the telephone at her mother's house. Mr. Gatson spoke with Mr. Johnson on the phone, informing him that Ms. Porter did not wish to speak with him. Ms. Porter never spoke with Mr. Johnson on the telephone that morning. At approximately 2:00 a.m., ten to fifteen minutes after his last attempt to reach Ms. Porter on the phone, Mr. Johnson arrived on the front porch of Ms. Porter's mother's house. Ms. Porter was able to watch Mr. Johnson approach the house through the living room's large picture window. She could identify Mr. Johnson because there was a street light in front of the house which illuminated his face.

While Mr. Johnson was on the porch Ms. Porter noticed a "bulge in the front of his shirt" which she believed was a gun. Mr. Johnson knocked on the front door. Mr. Gatson answered the door and told Mr. Johnson that Ms. Porter was not going to come out and that he needed to leave. An agitated Mr. Johnson told Mr. Gatson to "[t]ell Tracie I want to talk to her. Tell her to come here." When Ms. Porter refused to comply, Mr. Johnson began yelling loudly and angrily at Ms. Porter on the front porch. This lasted approximately five to ten minutes. He then yelled through the front door to Ms. Porter, "So you ain't going to come out?" After he received no reply, Mr. Johnson left the porch and approached Ms. Porter's automobile, which was located across the street from the house directly under the streetlight. Meanwhile, Mr. Gatson called 911 and told the dispatcher that Mr. Johnson would not leave and that he thought that Mr. Johnson had a gun.

While Mr. Gatson was reporting the situation to the 911 dispatcher, Ms. Porter watched through the living room window as Mr. Johnson stood with his back to her approximately twelve feet from her automobile. Although Ms. Porter never actually saw a gun, she heard four gun shots and saw what she described as "fire" coming from Mr. Johnson's hand. Mr. Gatson and the dispatcher, who was still on the telephone, also

heard the four shots. After Mr. Johnson fired the four shots, he drove away in his vehicle. Officer Brian Templeton was dispatched to the scene. When he arrived, he spoke with Ms. Porter's mother and Ms. Porter, who was visibly upset and crying. Both informed Officer Templeton of the argument between Mr. Johnson and Ms. Porter as well as the other events of that morning. Officer Templeton inspected the scene and noted that there were three bullet holes with no rust in the car's frame and that the right rear window had been shattered. From his observations, Officer Templeton concluded that the damage to the car had been inflicted very recently.

Subsequently, the State charged Mr. Johnson with unlawful use of a weapon in violation of § 571.030.1(4). At the jury trial on this charge, the State called Officer Templeton and Ms. Porter to testify and played the tape of the conversation between Mr. Gatson and the 911 dispatch operator. The defense offered no evidence. At the close of the State's evidence, Mr. Johnson filed a motion for acquittal in which he challenged the sufficiency of the evidence. The trial court denied this motion. The jury convicted Mr. Johnson of unlawful use of a weapon and the judge sentenced him as a prior and persistent offender to eight years in prison. Mr. Johnson filed a motion for a new trial in which he alleged that the trial court erred by refusing to grant his motion for acquittal because the state failed to produce evidence that anyone witnessed Mr. Johnson exhibiting the weapon. The trial court also denied this motion. Mr. Johnson timely filed this appeal from his conviction.

### Point on Appeal

Mr. Johnson's sole point on appeal is that the trial court erred by denying his motion for acquittal at the close of the State's evidence, because the State failed to prove that he exhibited a weapon in the presence of one or more persons within the meaning of § 571.030.1(4). Mr. Johnson does not contest the fact that there were one or more persons in his presence or that the gun was used in an angry or threatening manner. His only dispute relates to whether he exhib-

ited the gun within the meaning of the statute. Mr. Johnson claims that he could not have exhibited the gun in public view because there was no evidence that anyone actually saw the gun he used to shoot at Ms. Porter's car.

██ When considering the sufficiency of the evidence to support a criminal conviction, this court views the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State, and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). On appellate review, this court's function "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* This court does not weigh the evidence, nor does it determine the reliability or credibility of the witnesses. *State v. Broseman*, 947 S.W.2d ·520, 524 (Mo.App. 1997).

Under § 571.030.1(4), a person commits the crime of unlawful use of a weapon if he or she knowingly "[e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner...."[2] Mr. Johnson does not dispute that the firearm he used was readily capable of lethal use or that he used it in the presence of one or more persons in an angry or threatening manner. His only dispute relates to whether he exhibited the gun so as to satisfy the requirements of § 571.030.1(4).

██ The term "exhibit" is not defined by § 571.030 nor has it been interpreted by case law for purposes of this statute. Therefore, this court must "ascertain and give effect to the legislative intent by considering the language used in its plain and ordinary meaning." *State v. Lyles*, 695 S.W.2d 945, 946 (Mo.App.1985). When a court is deciding the meaning of a statutory term it must first determine the intent of the legislature from the wording of the statute and give effect to that intent, if possible. *State v. Wahby*, 775 S.W.2d 147, 151 (Mo. banc 1989).

The plain and ordinary meaning of statutory language is generally derived from the dictionary. *State v. Carson*, 941 S.W.2d 518, 521 (Mo. banc 1997).

██ The term "exhibit" is defined in various dictionaries. Webster's Collegiate Dictionary 406 (10th ed.1994) defines "exhibit" as "to show or display outwardly esp[ecially] by visible signs or actions." The American Heritage College Dictionary 480 (3rd ed.1993) defines exhibit as "to give evidence or an instance of; demonstrate." Webster's New World College Dictionary 476 (3rd ed.1997) defines exhibit as "to · present or expose to view; show; display; to give evidence of; reveal." In *Kingsley v. United States*, 569 S.W.2d 241, 242 (Mo.App.1978), the trial court in a civil case used Black's Law Dictionary and Webster's 3rd New International Dictionary to define "exhibit" as "to show or display, to offer or present for inspection" and "to present to view, show, display." As these definitions demonstrate, to "exhibit" an item does not require an item to actually be observed but merely that evidence of, or visible signs of the existence of the item be revealed.

██ Here, the evidence, in the light most favorable to the verdict, is that when Mr. Johnson stepped onto the porch of Ms. Porter's mother's house, Ms. Porter and Mr. Gatson both noticed a bulge inside his shirt, which they believed was a gun. ·Although Ms. Porter did not actually see the gun, she watched Mr. Johnson shoot towards her car and witnessed "fire" and heard gun shots coming from where he was standing. The reasonable inference from the "fire" is that it was a visible sign and evidence of a gun openly being fired. The sound of gun shots was also evidence that Mr. Johnson had a gun. Therefore, this court determines that Mr. Johnson· exhibited the gun by giving evidence of it through visible signs and actions according to the plain and ordinary meaning of the term "exhibit."

██ In his brief before this court, Mr. Johnson argues that this court should re-

---

**2.** Section 571.030 was amended in 1995 and 1997, but the amendments did not effect the

provisions of subparagraph (4) of subsection 1.

strict the definition of "exhibit" so as to require actual visual contact with the weapon in order to secure a conviction under the statute. However, as the foregoing discussion demonstrates, this is not the plain and ordinary meaning of the term "exhibit." In interpreting statutory provisions, this court is bound by the plain and ordinary meaning of its words. *Lyles,* 695 S.W.2d at 946. The plain and ordinary meaning of "exhibit" does not restrict its meaning to situations where actual visual contact is obtained.

This court's interpretation of "exhibit" is consistent with other jurisdictions' attempts to define that word or similar words. In *Patterson v. State,* 769 S.W.2d 938 (Tex.Cr. App.1989), the court had to determine the meaning of "exhibit" in the absence of a statutory definition or judicial construction. The court resorted to Webster's Third New International Dictionary 2523–24 (1976) in defining "exhibit" in the following manner: " 'to present to view: show, display: as a. to show (as a feeling) or display (as a quality) outwardly esp. by visible signs or actions.' " *Id.* at 941. *See also Kennedy v. State,* 774 S.W.2d 822, 825 (Tex.App.1989).

In *State v. Carter,* 681 S.W.2d 587 (Tenn. Cr.App.1984), the Court of Criminal Appeals of Tennessee was faced with a factual situation similar to the case at bar. In *Carter* the defendant was charged with aggravated assault for striking the victim from behind with a blackjack. *Id.* at 588. The offense of aggravated assault requires proof that the defendant committed the assault while displaying a deadly weapon. *Id.* The victim never saw the blackjack because he was struck from behind. *Id.* The *Carter* court had to determine whether the defendant displayed the weapon as required by the aggravated assault charge. The court resorted to the dictionary definition of "display" which defined it as "to show; exhibit; make visible . . . ." *Id.* at 589. The *Carter* court determined that the defendant displayed the blackjack within the meaning of the statute regardless of the fact that neither the victim nor any witnesses saw it. *Id.* "The defendant's open and visible use of the blackjack was a display of the weapon, regardless of whether the victim or any of the witnesses

saw it. The weapon was there to be seen had anyone happened to look in that direction." *Id.*

This court finds the *Carter* court's interpretation of "display" persuasive. "Display" is defined as "to exhibit" while "exhibit" is defined as "to display" by Webster's Collegiate Dictionary (10th ed.1994). Therefore, the terms are virtually synonymous. Under *Carter*'s reasoning, Ms. Porter did not need to see Mr. Johnson's gun in order for him to have exhibited it. Mr. Johnson's open and visible use of the gun was sufficient. The gun was there to be seen had anyone happened to look in his direction. Here, however, unlike *Carter,* Ms. Porter did witness visible signs of the gun through the "fire" and was made aware of its presence by the sound of gun shots. Mr. Johnson revealed the existence of the gun to Ms. Porter through visible signs and actions. Therefore, the case at bar is an even stronger case than *Carter* for finding that Mr. Johnson exhibited the gun.

Because the court considers the evidence, together with all inferences drawn therefrom, in the light most favorable to the verdict, we conclude that Mr. Johnson exhibited the gun to Ms. Porter. *Grim,* 854 S.W.2d at 405. Therefore, there was sufficient evidence from which the jury could have found Mr. Johnson guilty beyond a reasonable doubt. The trial court did not err in overruling Mr. Johnson's motion for judgment of acquittal.

The judgment of the trial court is affirmed.

All concur.