**STATE of Missouri, Respondent,**

v.

**Charles Patrick DUFFY, Appellant.**

**No. WD 55938.**

Missouri Court of Appeals,
Western District.

Dec. 7, 1999.

Lawrence R. McClure, Marshall, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Scott R. Pool, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., LOWENSTEIN and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

Charles Patrick Duffy appeals his conviction as an accessory to misdemeanor workers' compensation fraud, pursuant to §§ 287.128.1(8) and 562.041, RSMo 1994.[1] The court sentenced him to pay a $1000.00 fine. On appeal, Mr. Duffy argues that the trial court erred in denying his motion to dismiss with prejudice and his motion for judgment of acquittal because (1) § 562.041.2(2), the exception to accessory liability for persons necessarily incident to the principal crime, exempted him from liability; and (2) the one-year statute of limitations barred the State from prosecuting him for this crime. Mr. Duffy also claims that the trial court erred in denying his motion for judgment of acquittal because there was not competent and substantial evidence to support the verdict, and he contends that the verdict director for workers' compensation fraud did not include each element of the charged offense and was beyond the scope of the information, which resulted in a manifest injustice or miscarriage of justice. This court finds that (1) the necessarily incident exception of § 562.041.2(2) does not exempt Mr. Duffy from accessory liability for workers' compensation fraud; (2) the statute of limitations did not bar the State from prosecuting Mr. Duffy for misdemeanor workers' compensation fraud; (3) sufficient evidence supported the verdict; and (4) the verdict director included each element of the charged offense and was not beyond the scope of the information. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

On appeal from a criminal conviction, this court reviews the facts and any inferences therefrom in the light most favorable to the jury's verdict. *State v. Storey*, 901 S.W.2d 886, 891 (Mo. banc 1995). Mr. Duffy is a partner in Duffy Construction Company. In the latter part of 1995, Mr. Duffy hired his friend, Shawn Patrick Pannell, to work for Duffy Construction Company as a dump truck driver and general laborer. On July 17, 1996, Mr. Pannell injured his foot in a work-related accident. A physician advised Mr. Pannell to refrain from working until August 26, 1996.[2] Mr.

---

1. All statutory references are to the Revised Statutes of Missouri 1994.

2. Mr. Pannell's physician actually advised him he could return to work two weeks from

Pannell submitted a claim for reimbursement of his medical expenses and for temporary total disability benefits to Missouri Employers Mutual Insurance Company, Duffy Construction Company's workers' compensation insurance carrier. Mr. Pannell was advised that he was eligible for benefits only so long as he was unable to work. The insurance company approved Mr. Pannell's claim for benefits.

On August 14, 1996, Mr. Duffy came to Mr. Pannell's home. Mr. Duffy told Mr. Pannell that his company was short-handed, and he needed Mr. Pannell to return to work. Mr. Duffy offered to pay Mr. Pannell one-third of his normal salary in cash, and he assured Mr. Pannell that, because they were friends, he would not tell the insurance company Mr. Pannell was working while collecting workers' compensation benefits. Mr. Duffy told Mr. Pannell that if he did not return to work immediately, he would lose his job. Mr. Pannell returned to work for Duffy Construction Company the next day and was paid, in cash, by Mr. Duffy as promised. Mr. Pannell continued to work until August 26, 1996, when he suffered an injury to his finger while working at one of Duffy Construction Company's job sites.

On September 4, 1996, Mr. Pannell told a claims representative for Missouri Employers Mutual Insurance Company that he did not return to work after his July 17, 1996 injury to his foot until August 26, 1996. The insurance company had paid Mr. Pannell temporary total disability benefits for this injury from July 18, 1996 through August 25, 1996. The total amount of temporary total disability benefits the insurance company paid Mr. Pannell for this time period was $1114.28.

Because it was discovered that Mr. Pannell had been working while collecting temporary total disability benefits, the State charged Mr. Pannell with committing workers' compensation fraud. Mr.

Pannell pled guilty. The State also charged Mr. Duffy with violating §§ 287.128.1(8) and 562.041 by knowingly causing a false representation to be made for the purpose of obtaining workers' compensation benefits. The State alleged that Mr. Duffy encouraged Mr. Pannell to return to work before August 26, 1996, by telling him that he could continue to collect temporary total disability benefits while working and receiving pay for working. Following a trial, the jury found Mr. Duffy guilty and the court sentenced him to pay a $1000.00 fine. Mr. Duffy filed this appeal.

## The Exception to § 562.041.1 Does Not Exempt

### Mr. Duffy From Accessory Liability

In his first point on appeal, Mr. Duffy argues that because his conduct was necessarily incident to the commission of Mr. Pannell's crime and there is another statute under which he could have been charged, he is exempted from accessory liability by Section § 562.041.2. The State charged Mr. Duffy as an accessory with violating §§ 287.128.1(8) and 562.041.1. Section 287.128.1(8) makes it a crime to "[k]nowingly make or cause to be made any false or fraudulent material statement or material representation for the purpose of obtaining or denying any benefit." Section 562.041.1(2) makes a person criminally responsible for the conduct of another when the person aids the principal in the commission of a crime. Aiding is "any form of affirmative advancement of the enterprise." *State v. Brown*, 924 S.W.2d 3, 5 (Mo.App.1996). "[T]he law of aiding and abetting has long been deemed to include acts of encouragement." *State v. Richardson*, 923 S.W.2d 301, 317 (Mo. banc 1996). The State alleged in the information that Mr. Duffy caused Mr. Pannell to make a false representation to obtain

August 9, 1996, which would have been August 23, 1996. Since August 23, 1996 was a Friday, the claims representative for the

workers' compensation insurance company assumed Mr. Pannell would return to work on August 26, 1996.

benefits in that he encouraged Mr. Pannell to work and accept pay for working while receiving benefits.

Mr. Duffy argues that he is exempted from liability because he falls under one of the exceptions to accessory liability listed in § 562.041.2. Section 562.041.2 states that a person is *not* criminally responsible for the conduct of another in the following situations:

(1) He is the victim of the offense committed or attempted;

(2) The offense is so defined that his conduct was necessarily incident to the commission or attempt to commit the offense. If his conduct constitutes a related but separate offense, he is criminally responsible for that offense but not for the conduct or offense committed or attempted by the other person;

(3) Before the commission of the offense he abandons his purpose and gives timely warning to law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense.

Mr. Duffy alleges that he falls under § 562.041.2(2), the "necessarily incident" exception, because the crime as charged could not have been committed without his participation. Mr. Duffy claims that his alleged criminal conduct of telling Mr. Pannell to return to work before August 26, 1996, paying Mr. Pannell for working while receiving benefits, and telling Mr. Pannell that he could collect benefits while working and receiving pay for working, were necessarily incident to Mr. Pannell's commission of the crime of workers' compensation fraud.

■ Section 562.041 does not define the term "necessarily incident." This court must therefore "ascertain and give effect to the legislative intent by considering the language used in its plain and ordinary meaning." *State v. Lyles,* 695 S.W.2d 945, 946 (Mo.App.1985). When a court is deciding the meaning of a statutory term, it must first determine the intent of the leg-

islature from the wording of the statute and give effect to that intent. *State v. Wahby,* 775 S.W.2d 147, 151 (Mo. banc 1989).

The dictionary describes the definition of "necessary" as the following:

This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought.... [I]ts force and meaning must be determined with relation to the particular object sought.

BLACK'S LAW DICTIONARY 1029 (6th ed.1990). The definition of "incident" is:

Something dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance, something arising or resulting from something else of greater or principal importance.... [I]t denotes anything which inseparably belongs to, or is connected with, or inherent in, another thing called the "principal". Also, less strictly, it denotes anything which is usually connected with another, or connected for some purposes, though not inseparably.

*Id.* at 782. Thus, pursuant to the dictionary, the meaning of "necessary" is either absolutely physically necessary or merely convenient, useful or conducive to the end sought. Likewise, "incident" has two possible meanings. It means either inseparably connected to something of greater importance or usually connected, but not inseparably.

This court interpreted the "necessarily incident" exception to accessory liability in a manner consistent with these dictionary definitions in *Bass v. State,* 950 S.W.2d 940 (Mo.App.1997). The defendant in *Bass* had physically forced her daughter to have sexual intercourse with the defendant's boyfriend. *Id.* at 941. The jury convicted the defendant of rape as an accessory to

the crime. *Id.* at 942. In determining whether the necessarily incident exception applied to exempt the defendant from accessory liability, this court found that although the defendant clearly had been instrumental in perpetrating the rape, rape was a crime that could be committed without the participation of a third party. *Id.* at 944. To be exempt under the necessarily incident exception, this court held that the defendant must show that the crime could not have been committed without his or her participation. *Id.* "Thus, if the conduct is not a necessary part of the crime ... the exception does not apply." *Id.* Because the defendant was not necessarily incident to the commission of rape, the exception did not apply to her. *Id.*

■ When this court found in *Bass* that the "necessarily incident" exception exempts from accessory liability only those persons whose participation is essential to the commission of the defined offense it considered the purpose for the exceptions to accessory liability. When interpreting statutory language, courts must consider the language in the context of the whole statute and in light of the statute's object and purpose. *State v. Haskins,* 950 S.W.2d 613, 615 (Mo.App.1997). The Model Penal Code's exceptions to accessory liability are similar to those found in § 562.041.2.[3] MODEL PENAL CODE § 2.06(6) (1985). The Comment to 1973 Proposed Code § 562.041 and the Explanatory Note following § 2.06 of the Model Penal Code set forth the purpose for and the policy behind the necessarily incident exception to accessory liability.

The purpose for the necessarily incident exception to accessory liability is to protect those persons who "do not fall neatly into the category of victims." Comment to 1973 Proposed Code § 562.041. The persons who are exempted under the necessarily incident exception are like victims exempted under subsection 2(1) of

§ 562.041, but their participation in the crime is not as clearly innocent. *See* Comment to 1973 Proposed Code § 562.041.

The Explanatory Note to § 2.06 of the Model Penal Code explains the policy behind the necessarily incident exception. MODEL PENAL CODE § 2.06, Explanatory Note, Model Penal Code and Commentaries, Official Draft and Revised Comments, Part I, at 324. The Note states that public policy and attitudes concerning certain crimes, such as prostitution, are ambivalent, making enforcement difficult. *Id.* at 325. To hold every participant in these crimes criminally liable under an accomplice liability theory would be untenable. *Id.* It would also be untenable, however, to leave the decision of whether a participant should be held criminally liable to the individual prosecutor's discretion. *Id.*

■ The necessarily incident exception balances these policy concerns by exempting from *accessory* liability those persons whose participation is essential to the commission of the crime, but if their participation in the crime constitutes a "related but separate offense," holding those persons *principally* liable for that separate offense. Section 562.041.2(2). The necessarily incident exception "does not prevent [the participant's] being criminally liable, it merely requires the statute defining the offense to so specify. The subsection does make it clear that it does not bar conviction for a related offense based on [the participant's] own conduct...." Comment to 1973 Proposed Code § 562.041. Under this statutory scheme, the legislature is aware that participants who are necessarily incident to the commission of a crime will not be held liable under the accomplice statute. MODEL PENAL CODE § 2.06, Explanatory Note at 325. The statute therefore requires the legislature to address in the statute defining the principal offense whether the participants are criminally lia-

---

**3.** The Model Penal Code uses the term "inevitably incident" rather than "necessarily incident." dent."

ble for their conduct in connection with the offense. *Id.*

In this case, Mr. Duffy argues that his conduct was necessarily incident to Mr. Pannell's committing the crime of workers' compensation fraud by making a false material representation for the purpose of obtaining workers' compensation benefits. Mr. Duffy maintains that the crime *as charged* could not have been committed without his involvement. Mr. Duffy misapplies the necessarily incident exception. The question is not whether Mr. Duffy's conduct was useful or conducive to Mr. Pannell's crime under the facts of this case; it is whether the crime of workers' compensation fraud "is so defined" that the crime could not have been committed without a third party's involvement. Section 562.041.2(2). *See also Bass,* 950 S.W.2d at 944. While Mr. Duffy's conduct of encouraging Mr. Pannell to return to work by telling him that he could collect benefits while receiving pay for working certainly was conducive to Mr. Pannell making false representations to the insurance company, a violation of § 287.128.1(8) can certainly occur without a third party's aid or encouragement. Because Mr. Duffy's conduct was not necessarily incident to Mr. Pannell's commission of the crime of workers' compensation fraud, the exception to § 562.041.1 does not apply to Mr. Duffy.

█ Mr. Duffy also argues that because he could have been charged with committing a related but separate offense under § 287.128.1(4), which prohibits a person from knowingly assisting, abetting, soliciting or conspiring with any person who knowingly makes any false or fraudulent claim for the payment of benefits, he is exempted from accomplice liability under § 562.041.2(2). Although Mr. Duffy is correct that there exists a second statute under which he could have been charged, Mr. Duffy again misconstrues the law. Without a finding that Mr. Duffy's conduct was necessarily incident to the commission of the crime, the second sentence of the

exception does not come into play. The second sentence of § 562.041.2(2) states that if a person's "conduct constitutes a related but separate offense, he is criminally responsible for that offense but not for the conduct or offense committed or attempted by the other person." This sentence is not a separate exception to accessory liability, but is included in the necessarily incident exception to make clear that while participants are exempted from criminal responsibility as accessories, they may still be convicted for a crime if their "conduct constitutes a related but separate offense." *See* Comment to 1973 Proposed Code § 562.041. The second sentence of § 562.041.2(2) is included to clarify that the legislature may still impose liability for an offense excluded by the exemption if that liability is imposed in a different statutory section. *Id.*

█ Because Mr. Duffy is not exempt under the necessarily incident exemption, the second sentence of § 562.041.2(2) has no application. He could be charged under the accomplice statute or he could be charged with committing a related but separate offense under § 287.128.1(4) based upon his conduct alone. That there are two statutes under which the State could have proceeded against Mr. Duffy is not fatal to his conviction. When there exist two statutes under which the State might prosecute a defendant, the prosecutor has discretion to choose the crime with which to charge the defendant. *State v. Molinett,* 876 S.W.2d 806, 809 (Mo.App.1994). Point I is denied.

### The Statute of Limitations Did Not Bar the State from Prosecuting Mr. Duffy

█ In his second point, Mr. Duffy argues that the statute of limitations barred the State from prosecuting him. The statute of limitations for a misdemeanor offense is one year. Section 556.036.2(2). The State filed the information charging Mr. Duffy on August 14, 1997. Mr. Duffy claims that the State failed to sustain its

burden of proving that he aided or encouraged Mr. Pannell to commit workers' compensation fraud on or after August 14, 1996.

Pursuant to § 556.036.4, the statute which sets forth the time limitations for criminal offenses, "[a]n offense is committed either when every element occurs, or if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." The statute of limitations begins to run on the day after the offense is committed. § 556.036.4.

In this case, the State charged Mr. Duffy as an accomplice with knowingly making or causing to be made a false representation for the purpose of obtaining workers' compensation benefits in violation of § 287.128.1(8). Mr. Pannell made the false statement to the claims representative for Missouri Employers Mutual Insurance Company on September 4, 1996. Every element of the crime of workers' compensation fraud had not occurred until that date; thus, no violation of § 287.128.1(8) was committed until September 4, 1996. The State was well within the one-year statute of limitations when it filed its information on August 14, 1997. Point II is denied.

### Sufficient Evidence Found in Record to Support Conviction;

### No Material Variance Existed Between Verdict Director and Information

Mr. Duffy raises three claims of error in his third point on appeal. In two allegations of error, he alleges that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support his conviction as an accomplice to workers' compensation fraud. Specifically, Mr. Duffy's first claim of error is that his alleged conduct of telling Mr. Duffy he could collect workers' compensation benefits while continuing to work for a salary was insufficient to establish that he encouraged Mr. Pannell to make a false statement to the claims representative for Missouri Employers Mutual Insurance Company. Secondly, he asserts that the evidence was insufficient to establish that the false representation Mr. Pannell made on September 4, 1996 was for the purpose of obtaining benefits, because he had already collected all of the benefits prior to that date. In Mr. Duffy's third claim of error, he asserts that the verdict director went beyond the scope of the information by instructing the jury that it could find Mr. Duffy guilty of workers' compensation fraud by conduct other than that alleged in the information.

In deciding whether sufficient evidence supports the verdict, as raised by Mr. Duffy's first two claims of error, this court must determine whether substantial evidence exists from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). This court accepts as true all the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *Id.* Substantial evidence consists of evidence "from which the trier of fact could reasonably find the issue in harmony with the verdict." *State v. Gomez*, 863 S.W.2d 652, 655 (Mo.App.1993).

In his first claim of error, Mr. Duffy argues that the evidence that he told Mr. Pannell to return to work while continuing to collect his temporary total disability payments failed to prove that he encouraged Mr. Pannell to make a false representation for the purpose of obtaining workers' compensation benefits. While it is true that there was no evidence that Mr. Duffy directly told Mr. Pannell to lie about his return date to work when Mr. Pannell talked to the claims representative, deception was an integral part of the scheme Mr. Duffy was proposing. Mr. Duffy told Mr. Pannell to return to work before August 26, 1996, or he would lose his job. Mr. Duffy suggested to Mr. Pannell that if

he returned to work early, he could continue to collect workers' compensation benefits in addition to a portion of his salary and, since they were friends, Mr. Duffy would not tell anyone. Mr. Duffy further agreed to pay Mr. Pannell, in cash, the difference between the workers' compensation temporary total disability benefits he was receiving and his normal salary.

The evidence that Mr. Duffy promised that he would not tell anyone of Mr. Pannell's return to work and his agreement to pay Mr. Pannell in cash supports a reasonable inference that Mr. Duffy knew that Mr. Pannell would not receive workers' compensation benefits unless Mr. Pannell misled the insurance company concerning Mr. Pannell's work activity. It is not significant that Mr. Duffy did not encourage Mr. Pannell to make any particular misrepresentation. The jury could have reasonably believed that his proposed scheme for Mr. Pannell to defraud the insurance company implicitly required Mr. Pannell to make false representations.

█ In Mr. Duffy's second claim of insufficient evidence to convict, he asserts that the false statement that Mr. Pannell made on September 4, 1996, was not made for the purpose of *obtaining* any benefit because Mr. Pannell had been paid all his temporary total disability benefits before that date. To convict Mr. Pannell, the State had to prove under § 287.128.1(8) that he "[k]nowingly [made] or cause[d] to be made any false or fraudulent material statement or material representation *for the purpose of obtaining* or denying any benefit." (Emphasis added). This court considers this language to determine what conduct the legislature intended to make criminal, giving the words of the statute their plain and ordinary meaning. *Wahby,* 775 S.W.2d at 151. BLACK'S LAW DICTIONARY 1078 (6th ed.1990) defines the disputed term "obtain" as "[t]o get hold of by effort; to get possession of; to procure; to acquire, in any way." So long as Mr. Pannell's false statement was intended to procure for him, or to assist him in acquiring, the workers' compensation benefits, it

was sufficient evidence that it was made with a purpose to obtain the benefits.

· The relevant evidence was that Mr. Pannell returned to work for Mr. Duffy on August 15, 1996, and he continued collecting temporary total disability benefits until August 26, 1996. Thereafter, on September 4, 1996, Mr. Pannell falsely represented to a claims representative at Missouri Employers Mutual Insurance Company that he did not return to work until August 26, 1996. Roberta Bushdiecker, a claims representative for the insurance company, testified that the insurance company began paying Mr. Pannell his weekly temporary total disability payments even though the insurance company had not received a wage statement from Mr. Duffy. Since the company is required by the Division of Workers' Compensation to start paying benefits within a certain reasonable time, it commonly begins paying an estimated sum before it obtains the information needed to calculate the actual benefits due. It was not until Mr. Duffy's agent sent the wage statement on September 3, 1996, that the insurance company could compute the exact benefits due Mr. Pannell. Mr. Pannell's false statement to the insurance company on September 4, 1996, was made at the time the insurance company was determining the actual amount of temporary total disability benefits due Mr. Pannell, i.e., whether the insurance company had overpaid or underpaid him. Considering these facts, the State presented proof from which a reasonable juror could have found that the false statement was made by Mr. Pannell with a purpose to obtain, that is procure for him or assist him in acquiring, the workers' compensation benefits he claimed, since his entitlement to the benefits was still being determined at the time Mr. Pannell misrepresented his return date to work.

█ Finally, we turn to Mr. Duffy's claim that the trial court plainly erred by submitting the verdict director. Based upon his belief that his conduct of telling Mr. Pannell that he could collect workers' compensation benefits while working for a

salary was insufficient to establish that he encouraged Mr. Pannell to make a false statement, Mr. Duffy makes the claim that the verdict director went beyond the scope of the information by instructing the jury that it could find Mr. Duffy guilty of workers' compensation by conduct other than that alleged in the information.

The information stated in part:

[T]he defendant, acted in concert with Shawn Patrick Pannell, in that he knowingly caused to be made a false material representation for the purpose of aiding Shawn Patrick Pannell in obtaining any benefit, in that he encouraged his injured employee Shawn Patrick Pannell to return to work on August 15, 1996 rather than August 26, 1996 by stating that Pannell could continue collecting temporary total disability benefits from the Missouri Employers' Mutual Insurance Company while working and receiving pay for working.

■ The information charged that Mr. Duffy encouraged Mr. Pannell to make a false material representation to obtain workers' compensation benefits by telling Mr. Pannell he could return to work prior to August 26, 1996 and collect both workers' compensation benefits and his salary. Similarly, the verdict director asked the jury to find that Mr. Duffy encouraged Mr. Pannell to make a false material representation to obtain workers' compensation benefits to which he was not entitled. There is little difference between the information and the verdict director in this case. "Encouragement," as used in the law of aiding and abetting, "is the equivalent of conduct that 'by any means countenances or approves' the criminal actions of another...." *Richardson*, 923 S.W.2d at 318 (quoting *State v. Stidham*, 305 S.W.2d 7, 15 (Mo.1957)). By suggesting to Mr. Pannell that he could work and collect benefits at the same time, as the information alleged, Mr. Duffy was encouraging Mr. Pannell to lie to the Missouri Employers Mutual Insurance Company about when he actually returned to work so that he obtain benefits to which he was not entitled, which the verdict director stated.

■ Moreover, any variance between the information and verdict director would not constitute reversible error "unless a charge, new and distinct from the offense alleged in the information, [was] submitted to the jury." *State v. Williams*, 865 S.W.2d 794, 800 (Mo.App.1993). "Reversal is not required as long as the indictment reasonably notified the defendant of the evidence that would be presented at trial." *State v. Strughold*, 973 S.W.2d 876, 885 (Mo.App.1998). Comparing the information in this case to the elements of the charged offense, the information was sufficient to put Mr. Duffy on notice of the crime with which the State charged him, the conduct constituting the crime and the elements of that crime. See id. Additionally, the verdict director did not contain a new charge which was distinct from that alleged in the information. See Williams, 865 S.W.2d at 800. Mr. Duffy has failed to demonstrate that he was prejudiced by any variance between the information and the verdict director. Point III is denied.

The judgment of the trial court is affirmed.

All concur.