**STATE of Missouri, Respondent,**

v.

**Kenneth E. GHEEN, Appellant.**

**No. WD 57546.**

Missouri Court of Appeals, Western District.

April 10, 2001.

Daniel Franco, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

HOLLIGER, Judge.

Kenneth E. Gheen was found guilty by a jury on May 6, 1999, of felony murder in the second degree under § 565.021.1(2), and armed criminal action under § 571.015.1. On July 16, 1999, he was sentenced to concurrent terms of 15 years for the murder charge and 5 years for armed criminal action. He questions the sufficiency of the indictment, argues that the merger doctrine bars his conviction for felony murder, and contends that the court should have given a self-defense instruction. We affirm.

## FACTS

At trial, the parties gave conflicting testimony regarding incidents leading up to a road rage shooting. On August 25, 1998, Gary McEyla and his wife, Cherie McEyla, were driving north on Blue Ridge Boulevard in Independence, Missouri. Gary was driving with Cherie in the passenger seat. As they approached the I–70 exit, Cherie McEyla testified she and her husband were "cut off" by a car driven by Melanie Louderback. Also in the car with her were her boyfriend, Kenneth E. Gheen, and her young son. Gheen and Louderback testified that as they entered I–70 a truck sped up behind them and then tailgated them very closely. McEyla testified that Louderback slammed on her brakes, nearly causing a collision, while Louderback and Gheen testified that Louderback slowed down, but did not slam on her brakes. Louderback testified she slowed down to stop McEyla from driving so close. McEyla, then, pulled alongside Louderback and swore at Louderback out his window. Gheen also yelled out the window at McEyla. McEyla pulled over on the shoulder and got out of his truck and began yelling at Louderback and Gheen to stop. Gheen then told Louderback to pull over, which she did. All witnesses at trial, including the investigating officer, testified that the cars were about 100 yards apart. Gheen and Louderback testified that McEyla began to approach their car.

Cherie McEyla testified that her husband got out of his truck, and was yelling, but did not advance toward Louderback's car. After they pulled over, Gheen grabbed a .45–caliber semi-automatic handgun from the glove compartment. Cherie McEyla testified that Gheen got out of the passenger's side of the vehicle and fired the gun three times in the general direction of McEyla. Louderback and Gheen testified that Gheen stuck his arm out of the passenger window and fired in a "sweeping fashion." Gheen said he did this to scare McEyla into leaving them alone. At this point McEyla was approximately 100 yards away from Gheen. The testimony is uncontroverted that one of the bullets hit the ground several feet from where McEyla was standing, ricocheted off the ground and hit Mr. McEyla between the eyes. McEyla died the next day from the gunshot wound. After Gheen fired the gun, he and Louderback drove off, but then, minutes later, drove back around and noticed police officers on the scene. Louderback and Gheen testified that at the time they drove back around to the scene neither knew that anyone was injured, they just believed that someone must have had a cell phone and reported hearing gunshots. After that, Louderback and Gheen drove to Samuel Weaver's house where they tried to leave the gun. However, Weaver refused to take possession of the gun so Gheen took the gun to Ronny Quinlin's house who then disassembled the gun and threw the pieces in a river.

Before and after the presentation of evidence, Gheen requested the felony murder charge be dismissed, claiming the indictment was defective. These requests were denied. During the jury instruction conference, Gheen proposed a self-defense instruction and an alternative verdict director for murder in the second degree with reference to the self-defense instruction. Both tendered instructions were refused. Gheen also moved for dismissal of the felony murder charge based upon the felony merger doctrine. This motion was likewise denied. Gheen was found guilty by a jury of felony murder and armed criminal action and not guilty of conventional murder in the second degree.

Gheen appeals his conviction based upon four points.

## I

■ In his first point on appeal, Gheen challenges the sufficiency of his indictment. Gheen argues the indictment as to Count I in the alternative of second-degree felony murder was defective because it failed to state the essential facts constituting the alleged offense, specifically, those facts of the underlying uncharged felony of unlawful use of a weapon.

On October 2, 1998, a two-count indictment in the alternative was filed against Gheen. The alternative indictment charged Gheen with one count of murder in the second degree and, alternatively, one count of second-degree felony murder based upon the underlying felony of the unlawful use of a weapon.

The two Counts against Gheen read exactly as follows:

Count 1. Murder 2nd Degree—Felony (10031)

The Grand Jurors of the County of Jackson, State of Missouri, hereby charge that the defendant, Kenneth E. Gheen, in violation of Section 565.021.1, RSMo, committed the class A felony of murder in the second degree, punishable upon conviction under Section 558.011.1(1), RSMo, in that on or about August 25, 1998, in the County of Jackson, State of Missouri, the defendant with the purpose of causing serious physical injury to Gary D. McEyla, caused the death of Gary D. McEyla, by

shooting him, and [the] defendant is further given notice that should the State submit murder in the second degree-felony under Section 565.021.1(2), RSMo, it will be based on the perpetration of the class D felony of unlawful use of a weapon-exhibiting under Section 571.030(4), RSMo against Gary D. McEyla.

In the alternative, the state filed:

Count 1. Murder 2nd Degree—Felony (10031)

The Grand Jurors of the County of Jackson, State of Missouri, hereby charge that the defendant, Kenneth E. Gheen, in violation of Section 565.021.1(2), RSMo, committed the class A felony of murder in the second degree, punishable upon conviction under Section 558.011.1(1), RSMo, in that on or about August 25, 1998, in the County of Jackson, State of Missouri, Gary D. McEyla was killed by shooting him as a result of the perpetration of the Class D felony of unlawful use of weapon—exhibiting, under Section 571.030(4), RSMo, committed by the defendant on or about August 25, 1998, in the County of Jackson, State of Missouri.

Count 2. Armed Criminal Action (31010)

The Grand Jurors of the County of Jackson, State of Missouri, hereby charge that the defendant, Kenneth E. Gheen, in violation of Section 571.015, RSMo, committed the felony of armed criminal action, punishable upon conviction under Section 571.015.1, RSMo, in that on or about August 25, 1998, in the County of Jackson, State of Missouri, the defendant committed the felony of murder in the second degree charged in Count 1, all allegations of which are incorporated herein by reference, and the defendant committed the foregoing felony of murder in the second degree

by, with and through the use, assistance and aid of a deadly weapon.

Gheen was never charged with unlawful use of a weapon. That crime only served as the underlying felony for the charge of felony murder. Gheen specifically argues that the indictment is defective for five reasons. All five of Gheen's arguments involve the underlying uncharged felony of unlawful use of a weapon. Gheen claims the state failed to: (1) state the approximate time of the offense of unlawful use of a weapon, (2) state the type of weapon used, or exhibited, (3) state the location of the offense, (4) cite the specific statute fixing the penalty for the unlawful use of a weapon and (5) state the requisite element of the culpable mental state for unlawful use of a weapon necessary to convict Gheen. He argues only that the failure to state a mens rea is fatal to the conviction.

■ The purpose of an indictment is to provide due process notice to the accused of the charges pending against him so that he may prepare an adequate defense. *State v. Hodges,* 829 S.W.2d 604, 606 (Mo.App.1992). The test for the sufficiency of an indictment is whether it contains all essential elements of the offense set out in the statute and clearly apprises defendant of facts constituting the offense. *Id.* A court should reverse a conviction based upon a defective indictment only in instances where the indictment is so defective that by no reasonable construction can it be read to charge the defendant with the offense for which he was convicted. *Id.*

Supreme Court Rule 23.01(b) requires that an indictment or information shall state (1) the name of the defendant if known; (2) plainly, concisely, and definitely the facts constituting the offense charged; (3) the time and place of the offense charged as definitely as can be done; (4) the section of the statutes alleged to have been violated and the section

which fixes the penalty or punishment; (5) the name and degree, if any, of the offense charged.

The state argues first that its indictments were taken verbatim from MACH–CR–13.06, the pattern charge for second-degree felony murder. The state highlights that Rule 23.01(e) provides that "all indictments or informations which are substantially consistent with the forms of indictments which have been approved by this court shall be deemed to comply with the requirements of this Rule 23.01(b)."

MACH–CR–13.06 says:

13.06 MURDER IN THE SECOND DEGREE: FELONY

The (Grand Jurors) (Circuit Attorney) (Prosecuting Attorney) of the (City) (County) of _____, State of Missouri, charge(s) that the defendant, in violation of Section 565.021, RSMo, committed the class A felony of murder in the second degree, punishable upon conviction under Section 558.011 RSMo, in that (on) (on or about) [date], in the (City) (County) of _____, State of Missouri, [name of victim] was killed by (being shot) (being stabbed) ([concise statement of other means that caused death.]) as a result of the (immediate flight from the) (attempted) perpetration of the class ____ felony of _____ under Section _____, RSMo ([for additional felonies, see Notes on Use 2]) committed by the defendant (on) (on or about) [date], in the (City) (County) of _____, State of Missouri.

The state clearly fashioned its charges after the MACH–CR 13.06, only interlineating to fill in the specific facts of this case. Section 23.01(e) clearly provides that indictments substantially consistent with Missouri approved forms are deemed to comply with Rule 23.01(b). For this reason we find the state's indictments to be sufficient.

Although it is not completely clear from his brief, Gheen appears to argue that the elements of 23.01(b) should also apply to uncharged underlying felonies in felony murder cases. Gheen claims that all essential elements of the statute must be contained in the indictment and where the indictment fails to contain an allegation of the defendant's mental state, the failure to do so is fatal.

Gheen argues that in order to convict based upon a felony murder charge, the state must prove beyond a reasonable doubt every element of the underlying felony of unlawful use of a weapon. Section 571.030.1(4) says that "A person commits the crime of unlawful use of a weapon if he or she *knowingly:* Exhibits, in the presence of one or more persons, any weapons readily capable of lethal use in an angry or threatening manner." (emphasis added). The indictment charging Gheen with felony murder based upon the underlying felony of unlawful use of a weapon never states the mens rea applicable to the underlying felony, nor does it fulfill the other requirements of 23.01(b). Gheen further argues, without citing any authority, that the charging document alleging the underlying felony which would support a conviction of a second degree felony murder charge should state such essential facts and elements of the underlying felony with the same requisite specificity required by 23.01(b) for the actual charged crime.

We disagree. MACH–CR 13.06 does not require, or even recommend in its suggestions, that the rules of 23.01(b) must also be followed for an uncharged underlying felony when charging a defendant with felony murder. In order to provide the accused with proper due process notice, MACH–CR 13.06 only requires that the underlying felony be named in the indictment, which, in this case, it was. The

underlying felony is not so much an element of the charged crime as it is a way to prove the necessary mens rea for felony murder. *State v. Williams*, 24 S.W.3d 101, 110 (Mo.App.2000). "As such the rule does not make the underlying felony an element of the felony murder; it merely provides an additional means of proving the requisite felonious intent for murder." *Id.* The state fully complied with the rules of 23.01(b) and with MACH–CR and Gheen was provided ample notice of the charges against him. Therefore, we deny Gheen's first point on appeal.

## II

In his second point on appeal, Gheen argues that the trial court erred in overruling his motion to dismiss Count I in the alternative at the close of all the evidence because the charge and jury instructions numbers 11–14 were precluded by the felony merger rule from submission to the jury. The state argues that Missouri no longer recognizes the felony merger doctrine.

■■■ The felony murder rule "permits the felonious intent necessary for a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony." *State v. Bouser*, 17 S.W.3d 130, 135 (Mo. App.1999); citing *State v. Chambers*, 524 S.W.2d 826, 829 (Mo. banc 1975). "Proving one intended to commit the underlying felony raises a conclusive presumption that the defendant possessed the necessary felonious intent to support conviction for the resulting murder." *Id.*

The merger doctrine was a judicial creation and served as a means of limiting the felony-murder rule in instances where the underlying felony is the very act that, in fact, caused the homicide. *Id.* As early as 1878, in *State v. Shock*, 68 Mo. 552 (1878), Missouri applied the merger doctrine to felony murder cases. The court in *Shock*

held that the underlying felony for felony murder could not be "those acts of personal violence to the deceased which are necessary . . . elements of the homicide itself, and are, therefore merged in it." *Id.* at 561. Only a few cases have embraced the merger doctrine since its inception. *Bouser*, 17 S.W.3d at 137. In 1999, this court, after examining the evolution of Missouri's felony murder statute, as well as the Legislature's intent in creating such statutes, decided that the merger doctrine was no longer applicable to the Missouri felony murder statutory scheme. *See Bouser* at 140. The current Missouri statute regarding felony murder says:

> A person commits the crime of murder in the second degree if he:
>
> (2) commits or attempts to commit *any* felony and, in the perpetration or the attempted perpetration of such felony . . . another person is killed as a result of the perpetration or attempted perpetration of such felony. . . .

Section 565.021. (emphasis added).

■■■ The court in *Bouser* reasoned that "*any* felony" means any offense chargeable as a felony, resulting in the death of a person, under the Missouri statutory scheme. 17 S.W.3d at 139. Therefore, since the statute applies clearly to *any* felony, the Legislature intended all felonies remain separate and not merge into the charged crime. The *Bouser* court found under this statutory language, that the merger doctrine is not applicable. Again, in *Williams*, this court found that Missouri's felony murder statute precluded the application of the merger doctrine. 24 S.W.3d at 117. This time, the court relied on the language of § 565.021.2 which says: "Murder in the second degree is a Class A felony, and the punishment for second degree murder shall be in addition to the punishment for commission of a related felony or attempted felony, *other than*

*murder or manslaughter."* The *Williams* court held that the "inclusion of the limitation as to manslaughter excludes all other limitations." *Id.* Applying this court's decisions in both *Bouser* and *Williams*, we hold that the merger doctrine, under the current Missouri statutory scheme, is no longer a viable theory.

### III

In his third point on appeal, Gheen contends that the trial court erred in overruling his motion for acquittal as to second-degree felony murder because the state's evidence was insufficient to prove the underlying felony of unlawful use of a weapon. Gheen argues that in order to secure a conviction, the state is required to prove every element of the underlying felony beyond a reasonable doubt. Under § 571.030.4, a person commits the crime of the unlawful use of a weapon if he, among other things, "knowingly exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." Gheen argues that the state never proved beyond a reasonable doubt that he *knowingly* exhibited the gun in the presence of one or more persons or that he did so in an angry or threatening manner. Gheen claims that the state produced the testimony of only two witnesses who saw a weapon, but who never testified to seeing the weapon being exhibited angrily or threateningly. One witness, John Staples, testified that he saw the gun while it was being fired. Further, Gheen argues that his girlfriend and driver of the car, Louderback, was the only other witness who testified and she said she saw the weapon only immediately before it was fired and not while it was being exhibited in a knowingly angry or threatening manner.

Gheen is correct in his assertion that the state must prove every element of the underlying felony beyond a reasonable doubt. This is because the underlying felony is necessary in proving the intent element of felony murder. *Williams*, 24 S.W.3d at 110. The felony murder rules make the underlying felony not an element of the felony murder, but rather a means of proving the felonious intent for murder. *Id.*

The state counters by claiming that Gheen's argument is meritless in light of the testimony given at trial. The state argues that when one brandishes a weapon and then fires it in the general direction of another person, doing so constitutes an angry and threatening manner.

In reviewing a challenge to the sufficiency of the evidence, a court reviews the facts in the light most favorable to the verdict. *State v. Withrow*, 8 S.W.3d 75, 77 (Mo. banc 1999). The court accepts as true all the evidence favorable to the verdict, including inferences that may be drawn from the evidence. *State v. Wolfe*, 13 S.W.3d 248, 252 (Mo. banc 2000). We do not act as a juror in reviewing the sufficiency of evidence from a trial, but rather we limit our determination to a search for substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *State v. Duffy*, 8 S.W.3d 197, 204 (Mo.App.1999).

Section 571.030.1(4) requires that the state prove that the defendant did the following three things: (1) exhibit the weapon, (2) in the presence of one or more persons (3) in an angry or threatening manner.

First, the state elicited testimony from Gheen himself that he exhibited the weapon in the presence of at least two people. Gheen testified at trial that his girlfriend, Louderback, and her son were in the car with him at the time of the incident. We

have previously held that people need not actually see the firearm in order for the defendant's action to fulfill the exhibition requirement. In *State v. Johnson,* 964 S.W.2d 465 (Mo.App.1998), the court adopted the plain and ordinary meaning of "exhibits" and found its definition not to restrict its meaning to situations where actual visual contact is obtained. *Id.* at 469. Gheen pulled out his gun in the presence of Louderback and her son, stuck it out the car window and fired it. Finally, Gheen argues that even if we find the state proved that he exhibited the weapon in the presence of one or more persons, that the state still failed to prove that he did so in an angry and threatening manner. Gheen testified, himself, that he fired the weapon "in a sweeping fashion" in order to frighten McEyla. We find this testimony presented the jury with substantial evidence from which it could logically infer that Gheen handled the weapon in an angry or threatening manner. We further find that the state presented substantial evidence from which a reasonable juror could have reasonably found Gheen guilty. Point denied.

## IV

In his last point on appeal, Gheen argues that the trial court erred in overruling his proposed self-defense jury instruction.

In reviewing a trial court's decision not to submit a self-defense instruction, we view the evidence in the light most favorable to the defendant. *State v. Davidson,* 941 S.W.2d 732, 735 (Mo.App. 1997).

In order to submit a self-defense jury instruction, the defendant (1) must not have acted as an aggressor, (2) must have reasonable grounds for believing he faced immediate danger of serious bodily injury; (3) must not have used more force

than what appears reasonably necessary; and (4) must do everything in his power, consistent with his own safety, to avoid the danger and retreat if possible. *Id.*

Viewing the trial court's decision in the light most favorable to Gheen we, nevertheless, find that the trial court was correct in refusing to give Gheen's self-defense instruction. First, it does not appear from the record on file that Gheen has a reasonable basis for believing he was in danger and needing to defend himself. All parties testified that McEyla was approximately 100 yards away from Gheen at the time of the shooting. We do not believe Gheen's fear was reasonable when testimony showed that McEyla was 300 feet away. In addition, it is clear that Gheen did not do everything possible to avoid the confrontation with McEyla. Instead of continuing to ride on and avoid a confrontation after he realized Mr. McEyla had stopped his car, and avoid a confrontation, Gheen asked Louderback to pull over. After she obliged, Gheen grabbed a gun and either got out of the car or stuck the weapon out the window. In addition to failing to do everything possible to avoid the confrontation, Gheen also, when he told Louderback to stop the car, became an aggressor. An aggressor cannot claim self-defense and does not have the benefit of a self-defense jury instruction. When an accused has an opportunity to decline or abandon the altercation and does not, he then becomes an aggressor, whether or not he initiated the initial altercation. *State v. Adkins,* 537 S.W.2d 246, 250 (Mo. App.1976). "One who is the aggressor in the difficulty in which he killed another cannot claim self-defense unless he previously withdrew from the altercation so as to have shown his intention in good faith to decline further combat." *Id.* Point denied.

In conclusion, for the aforementioned reasons, we affirm the judgment of conviction.

ULRICH, Presiding Judge, and LOWENSTEIN, Judge, concur.